1819.

MATTER OF
WOLLSTONE-
CRAFT.

In the Matter of JANE N. WOLLSTONECRAFT, *an Infant.*

Where an infant is brought up on *habeas corpus*, the court will inquire
whether he is under any illegal restraint, and if he is so restrained,
will set him at liberty; but if there is no improper restraint, the
court will not, in this summary way, decide upon the right of
guardianship, or deliver over the infant to the custody of another.

If the infant is competent to form a judgment, and declare his election,
the court will, after examination, allow him to go where he pleases;
otherwise, the court will exercise its judgment for him.

*July 26th,* and
*August 3d.*

*HENRY* moved for the allowance of a *habeas corpus* to
bring up the body of the infant, alleged to be detained.
wrongfully by *Henry Garrison*, of *Philipstown*, in *Putnam*
county, or by *Sally Wollstonecraft*, the mother of the said
infant, or by *Joseph T. Jackson*, of *Fishkill*, in *Dutchess*
county, or by one of them.  In support of the motion, he
read the following papers :

1. An *affidavit* of *Richard Hall*, of *New-Ipswich*, in
the state of *New-Hampshire*, stating, that on the 27th
of *May*, 1818, the infant was placed in his family, and
under his care, by *Nancy K. Wollstonecraft*, the widow
of Major *Charles Wollstonecraft*, late of the city of *New-
Orleans*, deceased, father of the infant.  That the infant
was then in the *twelfth* year of her age, and was placed
with him in pursuance of the instructions of *Alfred
Hennen*, of *New-Orleans*, a counsellor at law.  That
the infant was a daughter of *Charles Wollstonecraft*, by
*Sally Garrison*, his former wife, and from whom, after the
birth of the infant, he was legally divorced, by the compe-
tent authority, in *Louisiania*, where they were domiciled,
and lived, at the time of the birth of the infant, and until
the time of the divorce.  That the divorce was on the 28th
of *February*, 1811, and *Charles Wollstonecraft* died in *Sep-*

*tember*, 1817. The divorce was granted at the instance of the said *Charles Wollstonecraft*, for the cause of adultery committed by his wife, *Sally W.*, with one *Harris*, and with divers other persons. That the said *Sally*, since her divorce, and for about two years before, had no intercourse with the said infant. That since the decease of *Charles W.* she has made divers attempts to obtain possession of the infant. That *Charles W.* and *Nancy K. W.* were married in 1812, or 1813, and lived together until his death, and the infant lived with them. That the said *Nancy* had the care of the infant, from the time of her marriage with *Charles W.* until the infant was placed under the care of the deponent. That *Charles W.*, by his will, gave one half of his estate to the infant, and appointed his wife *Nancy* her testamentary guardian, and enjoined her to secure the infant from any intercourse with her mother. That *Nancy K. W.* resigned her trust, as guardian, and procured *Alfred Hennen*, to be appointed guardian, by the competent authority in *Louisiana*. That she brought the infant to *New-Hampshire*, and by virtue of the authority of *Hennen*, placed her under the care of the deponent. That on the 28th of *August*, 1818, *Sally W.*, with the assistance of *Joseph T. Jackson*, forcibly took away the infant, and brought her into this state, and that she is now detained by the said *Joseph*, at his dwelling house, in *Fishkill*, or by the said *Sally*, or her father, *Henry Garrison*, at his dwelling house, in *Putnam* county. That the defendant was the agent of *Alfred Hennen*, the legally appointed guardian, who seeks possession of his *ward*.

(2.) *A letter* of *Alfred Hennen*, dated *New-Orleans*, 8th of *May*, 1819, directed to *R. H.* the above deponent, instructing him to apply personally, for the possession of the infant, and sending him 1,000 dollars, of which 600 dollars were to be applied agreeably to the instructions of *Nancy K. Wollstonecraft*, the second widow, and the other 400 dollars, to be applied by him for the expenses of the infant.

(3.) The *instructions* of *Alfred Hennen*, dated *New-Or-leans*, 28th of *April*, 1818, by which he put his ward, the said infant, under the charge and protection of the said *Nancy*, and directed her to proceed with the infant to *New-England*, and place her under the care of a clergyman, in some healthy, pleasant, and cheap residence in the interior, near an academy, where she might receive an education; and he thereby invested her with all his authority and control in respect to the infant.

(4.) *The proceedings* before the *Judge of Probates*, for the city and parish of *New-Orleans*, on the application of *Mary Kingsbury*, the said *Nancy K. W.*, widow and executrix of *Charles W.* praying that a tutor and sub-tutor to the infant might be appointed, and under which *Alfred Hennen* was appointed tutor to the infant, in *April*, 1818.

*Per Curiam.* Let the writ issue.

*August 2d,*
*1819.*

On this day, *Joseph T. Jackson*, on whom the *habeas corpus* was served, brought up the infant, and returned that the infant was placed in his family, and under his protection, by her mother and guardian, *Sally Wollstonecraft*, and with the approbation of her grandfather, *Henry Garrison*; and it appeared by a document accompanying the return, that *Sally W.* had been appointed guardian of the person and estate of the infant, by the *surrogate* of the county of *Putnam*, on the 19th of *March* last. The return being read and filed;

THE CHANCELLOR examined the infant touching her situation and wishes; and thereupon observed, that the object of the court was to release the infant from all improper restraint, and not to try, in this summary way, the question of guardianship, or to deliver the infant over to the custody of another. That the course and practice of the courts in these cases was only to deliver the party from illegal re-

straint; and if competent to form and declare an election, then to allow the infant to go where she pleased, and if the infant be too young to form a judgment, then the court is to exercise its judgment for the infant. That in the case of *Rex* v. *Johnson*, (1 *Str.* 579. 2 *Ld. Raym.* 1333. S. C. and 3 *Burr.* 1436. S. C.) the infant was so young as to have no judgment of her own, and the court delivered the child over to the party suing out the writ; but that case was afterwards overruled in *Rex* v. *Smith*, (2 *Str.* 982. 3 *P. Wm.* 155. note.) The practice sufficiently appeared from the cases of *Rex* v. *Clarkson*, (1 *Str.* 444.) *Ex parte Hopkins*, (3 *P. Wms.* 151.) *Rex* v. *Delaval*, (3 *Burr.* 1434. 2 *Cox*, 242.) *Matter of M'Dowles*, (8 *Johns. Rep.* 328.) and *Matter of Waldron*, (13 *Johns. Rep.* 418.)

The following order was, thereupon, entered:

" The above named *J. N. W.* being brought up before the Chancellor, by *Joseph T. Jackson*, upon a writ of *habeas corpus*, heretofore awarded in this case, and being examined, and appearing to be of the age of thirteen years, or thereabouts, and declaring herself to be of that age, and that she was unwilling to be delivered up to *Richard Hall*, on whose behalf the writ of *habeas corpus* was awarded, and that she wished to remain under the care, and in the custody of, her mother and *Joseph T. Jackson*, who married her aunt, and under whom she was placed by her mother, and she appearing to be of competent judgment to make a choice, *Ordered*, that she be restored to the custody of *Joseph T. Jackson*, and of her mother *Sally W.*"