People of the State of New York ex rel. Albert S.
Prior, Relator, *v*. Edith P. Prior, Respondent.

(Supreme Court, Kings Special Term for Motions, June, 1920.)

Contempt — when motion to punish for, denied — husband and
wife — jurisdiction — Domestic Relations Law, § 70 —
Inferior Criminal Courts Act (Laws of 1910, chap. 659).

The only method to compel a father to support his child is
found in the Inferior Criminal Courts Act (Laws of 1910,
chap. 659) and indirectly by an action for necessaries furnished
for the child.

Section 70 of the Domestic Relations Law does not confer
power upon the courts to direct a husband to pay a certain sum
of money to his wife for the support of their child, nor has
the court inherent power so to do.

A motion to punish a husband living separate and apart
from his wife, as for contempt in failing to obey that part of

an order made under section 70 of the Domestic Relations Law which required the payment by him to her of money for the support of their child, will be denied on the ground that the court was without jurisdiction to make such direction.

MOTION to punish for contempt.

George E. Miner, for relator.

Frank Harvey Field, for respondent.

LAZANSKY, J.  Application to punish a husband for contempt in failing to obey that part of an order made under section 70 of the Domestic Relations Law, which required the payment by the father to the mother of a certain sum of money for the support and maintenance of a child of the parties.  At the time of the granting of the original order which has been several times amended, the parties lived separate and apart. One of the answers of the husband to the motion is that the court had no jurisdiction in this proceeding to make an order providing for the payment by him of a sum of money for the maintenance and support of his child, even though the father consented to the order.  Every justice who has presided at *ex parte* either knows or has made use  of the practice of providing for the support of an infant, where in a proceeding brought under this section the award of the custody has been made to the mother.  The practice seems to have given satisfaction.  As far as I have been able to ascertain, no such order has ever been attacked for want of power.

In my opinion this enactment does not confer upon the court the power to make a money award, even if it be assumed the legislature has the right to confer such a power upon the courts.  It will be observed that the *charge* and *custody* of the child are awarded to a parent under such regulations and restrictions and

14

with such provisions and directions as the case may require. In other words, the person into whose custody the child is given must take the child under such regulations and restrictions and with such provisions and directions as the case may require. The language does not, in my opinion, warrant the claim that it empowers the court to direct the father to make a money provision. Since the court has no power under the statute to make a money provision, the question arises as to whether or not there is an inherent power in the court to make such a provision. The original statute was enacted in 1830. It then provided for a petition by the wife alone, for then the father was deemed the legal guardian. In 1896 the husband was also authorized to make the petition. Prior to its enactment the court, under a writ of habeas corpus, had no power to decide the question of custody of a child as between husband and wife. Under such a writ the only question involved was unlawful restraint. Of course, in cases of improper guardianship, the court would take the child away from the improper influence and was, therefore, compelled to make some disposition of the child. This, in effect, decided the question of custody. But the court never proceeded upon the basis of deciding that question. This statute, however, gave the court the power to decide the question of custody under a writ of habeas corpus on the application of the wife and thereafter, by amendment, on the application of the husband. Of course, as *parens patriæ* a court of equity, either by petition or by action, always asserted its power to determine a question of custody or guardianship of an infant. The foregoing views are considered in *Matter of Wollstonecraft*, 4 Johns. Ch. 80; *People* v. *Mercein*, 8 Paige, 46; *People ex rel. Sampson* v. *New York Catholic Protectory*, 93 App. Div. 196; *Matter of*

*Knowack,* 158 N. Y. 482; *Wellesley* v. *Duke of Beaufort,* 2 Bligh (N. S.), 124; *People ex rel. Brooks* v. *Brooks,* 35 Barb. 85; *People* v. *Chegaray,* 18 Wend. 637; *People* v. *Sternberger,* 12 App. Div. 398. Aside from statutory enactment, however, the court surely has no power under a writ of habeas corpus to make a money award. Attention has not been called to a case in this state where a court of law or equity has undertaken to make a money provision for the support of a child except in matrimonial actions. There is authority to the contrary. *Matter of Ryder,* 11 Paige, 185. It has also been held in a sister state that an action will not lie at the instance of a child to compel a father to support it. *Huke* v. *Huke,* 44 Mo. App. 308.

I conclude, therefore, that there is no inherent power in the court to make any such money provision. The only legal method to compel a father to support his child will be found in the Inferior Criminal Courts Act and indirectly by action against the father for necessaries furnished to the child. Since, therefore, the statute does not confer the power and the court has not the inherent power to make an award of money my conclusion is that that part of the order was made without jurisdiction. Such jurisdiction could not be conferred by consent of the parties. The motion must be denied. No costs.

**Motion denied, no costs.**