Argued September 13; modified October 17, 1944

# BARTLETT *v.* BARTLETT ET AL.

(152 P. (2d) 402)

Before BAILEY, Chief Justice, BELT, KELLY, BRAND and HAY, Associate Justices.

*Leo Levenson,* of Portland (Irvin Goodman, of Portland, on the brief), for appellant.

*Glenn R. Jack,* of Oregon City (Butler & Jack, of Oregon City, on the brief), for respondents.

BRAND, J.

The petitioner, Wilbur Forrest Bartlett, hereinafter called the plaintiff, brings this proceeding in habeas corpus to obtain custody of his son, Forrest Ello Bartlett, an infant. The defendant and respondent is

Ella May Bartlett, the mother of said infant, to whom the child had been awarded by a decree of divorce in the state of Idaho. Vera Halstead, the mother of Ella May Bartlett, is joined as a defendant. From a decree on the merits favorable to the contention of the mother, plaintiff appeals.

Forrest Ello Bartlett, the son of plaintiff and of the defendant, is now five years of age. On July 30, 1943, at the suit of the wife, a decree of divorce was entered by the Idaho court and she was given "sole control and custody of the minor child of the parties" until said child shall become twenty-one years of age. No provision was made in the divorce decree for any right of visitation on the part of the father. Subsequently the mother and infant son took up their residence in Clackamas county, Oregon, and in October, 1943, the father, who had remarried, brought this proceeding in habeas corpus.

The petition challenges the validity of the Idaho decree, but that issue is withdrawn by plaintiff's reply wherein it is admitted that the parties were divorced and that the decree of the Idaho court is in full force and effect. The petition in habeas corpus alleges that plaintiff "as the father of said minor son, has an interest in the welfare and well-being of said minor son, and is willing and able to provide a suitable and proper home for him; and petitioner alleges that the above named Ella May Bartlett and Vera Halstead are not fit and proper persons to have the care, custody and control of said minor son." He further alleges in substance that the defendants, the mother and grandmother of the child, have failed and refused and still fail and refuse to inform the plaintiff the whereabouts of his minor son and have refused him the right and privilege

of visitation and have concealed the said minor son, although plaintiff has on many occasions demanded to know the whereabouts of said son. The plaintiff alleges that he has not visited with or seen his son since October 5, 1942, and that on September 6, 1943, he called upon the defendants and demanded that they produce said child or disclose his whereabouts, which demand was refused by the defendants. He alleges that it is for the best interest of the child that plaintiff have his future custody.

The defendants in their answer set forth their residence in Clackamas county, the decree of divorce in Idaho, and allege that the plaintiff came to the defendants' home when the defendant Ella May Bartlett was ill "and threatened to steal the minor child, and threatened to run away with the minor child, and made serious threats against the defendants and against the minor child" and defendants admit that they refused to divulge the whereabouts of the child until the plaintiff agreed to contribute to the care and support of the said minor child. The defendants further allege that the plaintiff has failed and refused to contribute any sum whatever to the support of the child; has deserted the said child and placed the burden of his care upon the defendants.

Upon the issues thus presented, the cause was tried by the Clackamas county circuit court as a suit in equity. The decree provided that the custody of the minor child should remain with the mother "subject to the right of the plaintiff to visit with and have custody of said minor son for one day, semi-monthly, provided that said minor son shall be returned to his mother before darkness and, provided further, that the plaintiff shall pay to the mother for the support and

maintenance of said minor son, the sum of $40 per month.''

The plaintiff contends that the decree of the Idaho court awarding sole custody of the child to the wife is not binding upon the Oregon court; that the Oregon court properly took jurisdiction but erred in refusing to award to the plaintiff the custody of his son. He contends further that even if the court should ultimately determine that the mother should retain custody of the child, the decree of the Oregon court should be modified so as to further extend plaintiff's rights of visitation. He complains of the provision of the decree which merely grants plaintiff the right to have the custody of the minor son for one day semi-monthly and contends that he should be permitted to have his son two weeks in every month. He strongly objects to the provision of the decree which makes the right of visitation conditional upon the payment of $40 per month for the child's support and contends that the court is without power to make any order concerning support in a habeas corpus proceeding.

BRAND, J.

The testimony is exceedingly brief, dealing largely with events alleged to have occurred prior to the divorce decree. The only witnesses were the parents of the child. We find no evidence which would warrant a finding of unfitness on the part of either parent to have the custody of the child. In the course of the trial below, counsel for the plaintiff expressly admitted to the court ''that we can't make a showing that she [the mother] isn't a fit and proper person.'' While there is no evidence establishing moral unfitness of the mother nor any evidence of change of conditions with respect thereto, still there are changes

of conditions shown which have a direct bearing upon the welfare of the child and which warrant judicial investigation in this state if not prohibited by some rule of law.

The first question for decision relates to the power of the Oregon court to take jurisdiction in the habeas corpus proceeding. There are suggestions by the defendant, both in the lower court and here, that the Oregon court was without jurisdiction because it is required to give full faith and credit to the decree of the Idaho court concerning the custody of the child, at least in the absence of proof that conditions have changed since the rendition of the Idaho decree. But as the case now stands, the position taken by both plaintiff and defendant is consistent only with the view that the Oregon court had jurisdiction to consider the case on the merits. The plaintiff, by seeking the aid of equity in this proceeding, of course asserts that the Oregon court has jurisdiction to render relief. Defendant also, in effect, now contends in support of jurisdiction. Comparison between the decree rendered by the Idaho court concerning custody of the child and the decree rendered by the Oregon court discloses that in some respects at least the decree of the Oregon court is more favorable to the defendant than was the decree of the Idaho court in the divorce proceedings. The defendant has not appealed from the decree of the Oregon court, but on the contrary, upon this appeal she ardently supports the provision in the Oregon decree which makes the right of visitation upon the part of the plaintiff dependent upon his contributing to the support of the child.

■ The allegations of the complaint and answer in the habeas corpus proceeding raise issues as to the re-

spective present fitness of both parents as custodians of the child and we think that the Oregon court not only had jurisdiction, but was authorized to exercise the same in view of issues raised by the pleadings. The Idaho divorce decree was rendered under the provisions of a general statute which provides as follows:

"In an action for divorce the court may, before or after judgment give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper and may at any time vacate or modify the same." 2 Idaho Code 1932, § 31-705.

We take judicial notice of the statute of our sister state. O. C. L. A. § 2-503.

■■ Thus it appears that the decree of the Idaho court as to the custody of the child, being subject to modification in the same suit, was not a final decree. Furthermore, the pleadings and evidence in the habeas corpus proceeding establish that the defendant and the minor child are domiciled in Clackamas county, Oregon. Under the circumstances of this case, it is clear that the full faith and credit clause of the federal constitution did not bar the Oregon court from hearing the case on the merits, nor does any principle of comity prevent the exercise of that jurisdiction. *Barnes v. Lee,* 128 Or. 655, 275 P. 661; *In re Application of Ashley,* 113 Or. 43, 231 P. 153; *Levine v. Levine,* 95 Or. 94, 187 P. 609; *Griffin v. Griffin,* 95 Or. 78, 187 P. 598. We find nothing in the recent case of *Williams v. North Carolina,* 317 U. S. 287, 87 L. Ed. 279, 63 S. Ct. 207, 143 A. L. R. 1273, which is inconsistent with the Oregon decisions supra. We think that the circuit court properly awarded custody of the infant to the mother. The age of the child strongly supports the decree providing maternal custody.

The more difficult questions concern the so-called collateral provision of the decree. The real conflict between the parties relates to the right of visitation by the father and the duty of support which rests upon him. It will be recalled that the trial court, after awarding the custody to the mother, went further and provided in detail for the father's rights of visitation which were made conditional upon the payment by him of monthly installments for the support of the child. This portion of the decree raises questions of great importance as to the power of the court to determine so-called collateral matters in habeas corpus proceedings concerning the custody of children.

■ We will first consider the facts which in their legal setting disclose the problem and its importance. The Idaho divorce was obtained by substituted service and by default. The defendant husband did not reside in the state of Idaho, nor did he appear there. The Idaho court was therefore powerless to impose by decree any duty upon him to furnish continuing support for the child, nor could the mother by now returning to Idaho secure any more favorable decree. If the mother had secured a divorce in Oregon after service upon the defendant here, she would have had clear right to an original decree for the support of the child and the Oregon court would also have had continuing jurisdiction to supervise, modify, or enforce any orders relative thereto. Under such circumstances, it would be unnecessary to consider the power of the court in habeas corpus to render the requested aid to the child. The fact that the father, mother, and child are domiciled here and that the divorce was obtained elsewhere, presents a serious problem. The mother has deprived the father of all right of visitation; the father has deprived

the child of all support; and the father, mother, and child are deprived of the supervisory power of equity which is exercised in all ordinary cases where the divorce has been granted by an Oregon court. The father has a prima facie right to visit the child and a statutory duty enforced by criminal sanctions to support him, but long experience convinces us that neither criminal prosecutions nor any other remedy, if any, can adequately take the place of the type of relief granted in equity by the divorce courts. Since the parties can not be subjected to, or protected by, the control of equity under the divorce jurisdiction, the urgent question is presented here as to whether similar relief may be administered in this proceeding.

██ We are not here concerned with the writ when employed to determine the legality of the imprisonment or restraint of a person under the provisions of O. C. L. A. §§ 11-401 to 11-443, but only when employed to determine the custody of minor children. The special proceedings prescribed by that statute are of a legal, as distinguished from an equitable, nature and appeals are taken "with like effect as in an action." O. C. L. A. § 11-443; 29 C. J., Habeas Corpus, p. 9. Under the statutory procedure as applied to criminal cases, the issue is whether the person is illegally imprisoned or restrained. The procedure is summary, the judgment of the court is limited within the traditional scope of habeas corpus *ad subjiciendum* and is ordinarily limited to the discharge or remand of the prisoner from custody. O. C. L. A. § 11-425. All of the ancient common laws writs, other than the one designated in our statute, are abolished, O. C. L. A. § 11-401, and the authorities in this and other states clearly establish that the employment of the writ in

cases of child custody is not pursuant to, but independent of, statute. The employment of the forms of habeas corpus in child custody cases rests upon the inherent power of a court of equity exercising the power of the state as *parens patriae* for the protection of infant wards of the state. In *Turner v. Hendryx,* 86 Or. 590, 167 P. 1019, 169 P. 109, it was contended that habeas corpus when employed in child custody cases, was a proceeding at law rather than in equity. After citing authorities, this court said:

"" * * * The very nature of the investigation, the peculiar latitude involved in the inquiry, the nature of the relief sought and granted, all present an irresistible demand for the intervention of a court of equity. In the absence of our statute, quoted supra, it must be conceded that a court of equity would have jurisdiction. It has been held that since the Constitution, in its provision for maintaining the writ at all times except when in rebellion or invasion the public safety requires its suspension, is a protection of the writ as it obtained under the common law, no legislature can abrogate or impair its efficiency: People ex rel. Tweed v. Liscomb, 60 N. Y. 559 (19 Am. Rep. 211) ; Servonitz v. State, 133 Wis. 231 (113 N. W. 277, 126 Am. St. Rep. 955) ; from all of which we conclude that the use of the writ, as it was available at common law, is still available in courts of equity, and the fact that our legislature has seen fit only to provide a mode of procedure for its exercise in the cases for which it was originally designed, and is silent as to procedure in cases calling for the exercise of chancery powers in connection therewith, it follows that the statutory proceedings in equity cases are still available in this proceeding, which is clearly sui generis. We shall therefore consider the case as pending before us a de novo hearing." *Turner v. Hendryx,* supra, (86 Or. 590, 594).

Again, it is said:

"\* \* \* The state, as parens patriae and successor to the king in England, exercises by equitable proceedings a general supervision over, and is in theory the guardian of, all minors who are neglected by their parents. 'The right of the state to exercise guardianship over a child,' says Mr. Justice Chadwick in Weber v. Doust, 84 Wash. 330, 333 (146 Pac. 623, 624), 'does not depend on a statute asserting that power. Such statutes are only declaratory of the power already and always possessed by courts of chancery, and they will even now exercise that power concurrently or in aid of a statute.' " *Ex parte Bowers,* 78 Or. 390, 395, 153 P. 412.

A recent Texas case states the rule as follows:

"The writ of habeas corpus is used in this state as a form of procedure for the purpose of litigating questions as to the proper custody of children and ascertaining what would be to the best interest of the child, to society and to the state, and is addressed to the equity powers of the court, and the power is given to the courts to make the change as a remedial right. The trial judge sits as a court of chancery, exercising broad equitable power, and the rules regulating the exercise of that power are and should be liberally construed. He should hear all legitimate testimony bearing upon the question, unhampered by narrow technical rules." *Tunnel v. Reeves,* Texas, 35 S. W. (2d) 707, 709.

The rule is stated in New Jersey as follows:

"It is not the limited jurisdiction upon habeas corpus which is exercised by the Justices of the Supreme Court as well as the Chancellor which is invoked in this case. The petition is not directed toward freeing this little child from imprisonment. The pleadings set forth in detail the claims of the contending parties to the custody of the infant,

and the proofs have been directed toward sustaining and defeating respectively each of these hostile claims. The broad jurisdiction which is invoked is the 'general equity jurisdiction over the custody of the person of infants which the Chancellor exercises as parens patriae.' " *Ex parte Flynn,* 87 N. J. Eq. 413, 100 A. 861.

The nature of the jurisdiction in habeas corpus in child custody cases is well stated by the supreme court of Missouri in *Ex parte Badger,* 286 Mo. 139, 226 S. W. 936, 14 A. L. R. 286. That case involved a bill in equity not based on statute for the maintenance and custody of three minor children. The court said:

"The jurisdiction of the trial court having been established, only passing consideration need be given to the formal character of the proceeding. It was, as stated, a suit in equity for maintenance and the custody of the children. Many precedents sustain the propriety of this form of proceeding. In others, to effect a like purpose as to custody, habeas corpus has not improperly been resorted to. In such cases it is not the limited jurisdiction of this writ that is invoked, because the proceeding is not directed towards freeing children from imprisonment, but to exercise the broader power of courts of general equity jurisdiction over the custody of the persons of infants.* * *" *Ex parte Badger,* 286 Mo. 139, 226 S. W. 936, 940, 14 A. L. R. 286.

The following cases support the opinion which we have expressed concerning the nature of the jurisdiction of equity in habeas corpus cases concerning child custody: *Armstrong v. Vancil,* 169 Or. 320, 128 P. (2d) 951; *In re Henkle,* 153 Or. 337, 56 P. (2d) 343; *In re Application of Ashley,* 113 Or. 43, 231 P. 153; *Bryant v. Dukehart,* 106 Or. 359, 210 P. 454; *Larson v. Wellner,* 97 Or. 513, 191 P. 671; *Griffin v. Griffin,* 95 Or. 78, 187

P. 598; *Ex parte Barnes,* 54 Or. 548, 104 P. 296, 25 L. R. A. (N. S.) 172; *Dixon v. Dixon,* 72 N. J. Eq. 588, 66 A. 597; *Schultz v. Brown,* Texas, 152 S. W. (2d) 801; *People v. Glendening,* 259 App. Div. 384, 19 N.Y.S. (2d) 693; *Ex parte Hoines,* New Jersey, 112 A. 613; *Adair v. Clure,* 218 Iowa 482, 255 N. W. 658; *Jensen v. Sorenson,* 211 Iowa 354, 233 N. W. 717; *Finn v. Rees,* Idaho, 141 P. (2d) 976; 25 Am. Jur., Habeas Corpus, p. 202, § 78 and p. 204, § 80; 29 C. J., Habeas Corpus, p. 108, § 101.

■■ The relief administered in habeas corpus when invoked in child custody cases has already been largely extended beyond the scope of the writ when employed in criminal cases. In determining the right of custody, the court is not bound by strict rules of law. It exercises a wide discretion wherein the paramount consideration is the welfare of the child and in a proper case it may take the child from the custody of its parents or guardians or from the person to whom the legal custody has been previously awarded. 25 Am. Jur., Habeas Corpus, p. 204, § 80, and cases cited supra. Nor is jurisdiction under the writ limited to the award of legal custody. Having granted custody to one parent, the court can, and frequently does, provide in some detail for rights of visitation by the other parent. *Dixon v. Dixon,* supra; *Ex parte Winn,* 48 Ariz. 529, 63 P. (2d) 198; *Oetter v. Oetter,* 150 Ga. 118, 102 S. E. 818; *McKercher v. Green,* 13 Colo. App. 270, 58 P. 406; 39 C. J. S., Habeas Corpus, p. 581, § 44. Requirements concerning the future religious education of the child have likewise been incorporated in the order. *Ex parte Charter,* 265 App. Div. 1006, 39 N. Y. S. (2d) 282.

Notwithstanding the well established rule of liberal construction concerning the powers of a court of equity

as *parens patriae* in habeas corpus cases, numerous authorities have held that it is beyond the power of the court in that form of action to determine issues collateral to the bare question of custody. More especially, it has been held that the court in habeas corpus cannot make the right of visitation of a father conditional upon performance by him of his duty to support and cannot in such a proceeding order the father to support a child whose custody is awarded to the mother, even where the father invoked the jurisdiction of the court in the first instance.

The origin of this doctrine is not difficult to ascertain. It is the application to child custody cases of the firmly established rules governing the summary procedure of courts of law in habeas corpus *ad subjiciendum* in cases of illegal imprisonment. It is also in some states based upon the archaic view that a father's duty to support his child is, in the absence of statute, only a moral, as distinguished from a legal, duty. A third reason assigned is that actions against a parent should not be encouraged since they "tend to disturb the cordial relationship that should exist by virtue of blood ties." A final explanation of the narrow view is to be found in the fact that some courts still consider habeas corpus, when invoked in child custody cases, to be a proceeding at law rather than in equity. These decisions, we think, require reexamination in the light of modern principles of equity and procedure.

The leading case supporting the narrow view appears to be *Buchanan v. Buchanan,* 170 Va. 458, 197 S.E. 426, 116 A. L. R. 688. In that case husband and wife entered into a separation agreement and contracted concerning the custody and support of minor children. The father then procured a Nevada divorce after which

he brought habeas corpus in Virginia seeking custody and alleging unfitness of the wife and that she had breached the contract concerning the expenditure of the agreed support money of the children. Upon issue joined, the court entered a consent order making substantial changes in the property rights of the parties and reducing the monthly allowance provided by contract from $1500 to $375 which latter sum the father was directed to pay for support of the wife and children. The order directed the clerk to place the case on the inactive list. Thereafter, the mother moved the court to put the case on the pending docket and by petition asserted the unfitness of the father, set forth his annual income of $60,000 and prayed for further relief for the children. The court found no unfitness on the part of either parent and awarded some of the children to the mother with a direction to the father to pay $375 a month for the support of the children. The father failed to comply with the order, was sentenced for contempt and appealed. The Virginia supreme court held that the order for support, being made in the habeas corpus case, was void as collateral to the issue. It next considered whether "in an independent action at law instituted by minor children and a divorced wife the court has jurisdiction or power to compel a father to pay out of his income a definite sum each month for the future support * * * of his minor children."

The opinion, a lengthy one, can only be briefly summarized. The legal duty of a father to support his children was recognized. In its earlier stages the lower court had treated the cause as an action at law and had deprived the father of the right to a bill of review which would have been available to him had the cause

been tried on the equity side of the court. The supreme court held, in substance, that by reason of the rulings of the trial court the case must be treated on appeal as an action at law and as a technical habeas corpus proceeding. It held that the distinction between law and equity should be maintained. Having determined that the proceeding was at law, the conclusion naturally followed that collateral matters would not be considered. The opinion is fortified by the assertion that action or suit by or on behalf of a child against its parents should not be encouraged because they tend to "disturb the cordial relationship that should exist," an argument which scarcely seems applicable in a bitterly contested lawsuit between divorced parties. The mother contended, "contrary to her contention in the lower court," that the proceedings should be regarded as invoking the parental and protecting power of the commonwealth in a chancery court in determining controversies concerning minors, their persons and property. This contention was also rejected for the reason already stated, namely, that the case was tried below as an action at law.

In view of the distinction pointed out, we think that the Buchanan case cannot be deemed an authority in this state where equitable principles are applied. The case does, however, suggest by implication that the inherent power of equity might be invoked by proper pleading by a respondent in a case which originated as habeas corpus.

Other decisions denying the power of a court to provide for support for minor children in habeas corpus cases are listed in the note following *Buchanan v. Buchanan*, supra, 116 A. L. R. 999. They are as follows: In *Lowery v. Lowery*, 108 Ga. 766, 33 S. E. 421 (1899),

the decision consists of a syllabus only without published opinion and it does not appear whether the procedure was deemed to be legal or equitable. The same uncertainty appears in *Ferguson v. Ferguson,* 36 Mo. 197 (1865). *Foulke v. People,* 4 Colo. App. 519, 36 P. 640 (1894), and *Harrison v. Harker,* 44 Utah 541, 142 P. 716 (1914), should be grouped together.

In the Foulke case the father had temporarily entrusted the custody of the child to his deceased wife's sister. There was no question of unfitness on the part of either contender for custody. The father was clearly entitled to have his child, but the trial court, after making several confusing and inconsistent ex parte orders, gave custody of the child to the sister until the father should pay past expenses incurred by her in caring for the child. The appellate court said: "I have not been able to find another case, either in law or equity, where an infant was by the decree of court taken from its father, and pledged as security for its board bill." It was held that the father was unconditionally entitled to custody.

*Harrison v. Harker,* supra, involves a similar question. The father and mother of a child brought habeas corpus against a stranger for custody of their child. The child was awarded to them. The respondents contended that the trial court should have required the parents to compensate the former custodian for past expenses incurred in supporting the child. It was held that the trial court did not err in refusing to impose such a condition.

The decisions in the last mentioned two cases are clearly distinguishable from the case at bar. It is one thing to withhold custody from the person clearly entitled to it, thereby disregarding the best interests of

the child, for the purpose of forcing repayment to a stranger of expenses already incurred. It is quite another thing to award custody to a mother in accordance with the best interests of a child and then for the same reason to require a negligent father to contribute future support.

Three New York cases are cited in support of the proposition that the court in habeas corpus is without power to provide for support of the infant: *People ex rel. Prior v. Prior,* 182 N. Y. S. 577 (1920); *People ex rel. Klee v. Klee,* 202 App. Div. 592, 195 N. Y. S. 778 (1922); and *Bedrick v. Bedrick,* 270 N. Y. S. 566, affirmed without opinion in 241 App. Div. 807, 271 N. Y. S. 949 (1933). The New York decisions appear to be in conflict.

In *People ex rel. Prior v. Prior,* supra, before the supreme court, special term, the court held that the provisions of the domestic relations law authorizing a proceeding to secure custody of an infant do not authorize the court to direct the father to make a monetary provision. The court was of the opinion that there was no power under writ of habeas corpus to decide the custody of a child between husband and wife in the absence of statute. Such is not the law in Oregon. It was recognized that a court of equity as *parens patriae* upon petition always had asserted its power to determine the question of custody, but the court held that there was no power to make a money award either at law or equity, except by virtue of statute. The court concluded that there was no inherent power in the court to make any money provision. The court relied upon *Matter of Ryder,* 11 Paige 185, 42 Am. Dec. 109 (1844). That case, however, merely held that a court of chancery would disclaim the existence of any power to

control parental discretion in the case where a son twenty years of age and in perfect health so as to be able to support himself by his own industry seeks to compel his mother to furnish him the means for a professional education.

*People ex rel. Klee v. Klee,* supra, was decided by the supreme court appellate division, forth department. In this case, also, it was held that the statute did not authorize the making of an order for maintenance and support of an infant in a habeas corpus case. The court relied upon a decision by Chancellor Kent in 1819, *Matter of Woolstonecraft,* 4 Johns. Ch. 80, which, of course, strictly construed the powers of the court in habeas corpus. The court followed *Prior v. Prior,* but did not discuss the question of inherent power of equity. One judge dissented, being of the opinion that the statute authorized the making of the support order. In both the Prior case and the Klee case, it was recognized that the practice before the New York courts had been to make orders in habeas corpus proceedings for the support of infants and that the practice was satisfactory, although it was thought that the practice was without authority.

*Bedrick v. Bedrick,* supra, was decided by the supreme court, special term. The mother of an infant petitioned the court for an order requiring the father, from whom she was separated, to support the infant child of the parties. The order for support was made, but upon the motion of the father was vacated. The court cited *Johnson v. Johnson,* 206 N. Y. 561, 100 N. E. 408, Ann. Cas. 1914B, 407, as authority for the proposition that such relief may not be given in a separate action, but can only be given when incidental to a matrimonial action. The holding in *Johnson v. Johnson* was

merely to the effect that in an action by a wife against her husband for support, she was not entitled to counsel fees *pendente lite,* and that the court had no jurisdiction of an action brought merely to secure maintenance and support by a wife in the absence of a prayer for separation or divorce. The Johnson case is not in point in our present inquiry for the reason that the rights of an infant were not involved. Courts do not exercise their power as *parens patriae* to protect wives living apart from their husbands. *Bedrick v. Bedrick* does contain a dictum to the effect that habeas corpus is not available to secure an order for support of an infant, but in that case the mother already had custody of the infant and the proceeding was not in habeas corpus. The court further inquired as to the right of a court of equity to compel the support of a minor child by petition. In support of its conclusions that equity had no such inherent power, the court relied upon ancient and outmoded authorities that there is no legal obligation on a father or mother to maintain a child. The authority of the case is greatly weakened because of the reasons upon which the decision rests. It was affirmed without opinion by the supreme court, appellate division, 271 N. Y. S. 949.

In the carefully considered opinion of *Ex parte Rich,* 254 App. Div. 6, 3 N. Y. S. (2d) 689, the supreme court appellate division, first department, gave careful consideration to the power of the court in habeas corpus to impose conditions concerning the support of the infant child. The court again considered the New York statute and held that an order for the support of an infant child was not foreign to the remedy of habeas corpus and held further that the supreme court as a court of equity has broad inherent powers concerning

the custody of children and that the statutes concerning habeas corpus do not limit those powers. The court said:

"In a habeas corpus proceeding involving custody of a child of tender years, we see no reason why the Supreme Court may not impose such conditions as to visitation by either parent as the welfare of the infant requires. There are authorities holding that in habeas corpus proceedings the court may not make an order initiating liability for the support of the child. See People ex rel. Klee v. Klee, 202 App. Div. 592, 195 N. Y. S. 778, Fourth Dept.; People ex rel. Prior v. Prior, 112 Misc. 208, 182 N. Y. S. 577. But no direction for the payment of any sum for support was made in the present case. The order was limited to making visitation conditional on the payment of support. The father was already obligated to make such payments by his own agreement and by the judgment of the Florida court." *Ex parte Rich,* supra.

The court in the Rich case, supra, relied upon *Finlay v. Finlay,* 240 N. Y. 429, 148 N. E. 624, 40 A. L. R. 937, a unanimous decision of the New York court of appeals by Justice Cardozo. In that case a husband brought an action against his wife seeking a decree granting him custody of his minor children during specified periods. The court said:

"We think the welfare of children does not appear from the complaint to be the basis of the husband's prayer for an apportionment of parental rights, nor is an action between contending spouses the proper form of remedy."

Again, the court said:

" * * * Except when adjudged as an incident to a suit for divorce or separation, the custody of children is to be regulated as it has always been, in one or other of two ways: By writ of habeas corpus, or

by petition to the chancellor. * * * If we were to assume with the plaintiff that the writ has been denied to him, there would remain his remedy by petition to the chancellor or to the court that has succeeded to the chancellor's prerogative. * * * Nothing in the habeas corpus act affects that jurisdiction, inherent in courts of equity, or changes or diminishes the remedy available. It is not a remedy by suit. It is a remedy by petition. * * *'' *Finlay v. Finlay,* supra.

Speaking of the power of the chancellor in exercising his jurisdiction by petition, the court said:

''* * * He acts as parens patriae to do what is best for the interest of the child. * * * He is not determining rights 'as between a parent and a child,' or as between one parent and another. * * * He 'interferes for the protection of infants, qua infants, by virtue of the prerogative which belongs to the Crown as parens patriae.' * * *'' *Finlay v. Finlay,* supra.

■ For reasons which will become apparent, we next consider the nature of the inherent equitable power over infants to which Judge Cardozo referred. The authorities cited earlier in this opinion relate to inherent equitable powers which are exercised in habeas corpus proceedings. We now consider those powers when invoked in a slightly different *form* of suit — the petition to the chancellor, or in general, the independent suit in equity in the nature of such a petition. We think it to be firmly established that equity may, without invoking the writ of habeas corpus, exercise its inherent power to protect infants and determine their custody. 4 Pomeroy Eq. Jur. 875 (5th ed.), § 1307; 27 Am. Jur., Infants, p. 832, § 111; *Finlay v. Finlay,* supra; *Ex parte Erving,* 109 N. J. Eq. 294, 157 A. 161; *Pugh v. Pugh,* 21 Ala. App. 650, 111 So. 644.

In *Ex parte Hoines,* supra, (New Jersey, 112 A. 613) the court in a habeas corpus case said:

"The writ was merely ancillary to the exercise of jurisdiction of the court of chancery of New Jersey as parens patriae to determine the custody of infants who are brought within the control of the court by the writ."

The supreme court of Missouri in a masterful opinion by Walker, C. J., has reviewed the authorities, ancient and modern, and covered substantially every question with which we are here concerned. A wife brought a bill in equity against her husband, living apart, for maintenance and custody of their three children. She prevailed in the circuit court. The defendant father was sentenced for contempt of court for failure to comply with the order. He brought habeas corpus to test the jurisdiction of the court of equity. It was held that the equity court had jurisdiction and the petitioner was remanded to custody under the sentence for contempt. The decree was affirmed in the court of appeals in a valuable opinion, *Badger v. Badger,* 204 Mo. 252, 224 S. W. 41, and again affirmed by the supreme court, *Ex parte Badger,* 286 Mo. 139, 226 S. W. 936, 14 A. L. R. 286. The latter opinion is too long for quotation, but it is both sound and persuasive.

■ The inherent jurisdiction of equity is not limited to the bare matter of the award of custody of an infant. The court will also concern itself over provisions for its support and the jurisdiction of the court is not limited to cases in which the infant has property. All that is necessary is that the infant be made a "ward of the court" and he becomes such a ward whenever he is brought before the court for any purpose. 4 Pomeroy

Eq. Jur. 871 (5th ed.), § 1305; *Adams v. Gillis,* Texas, 277 S. W. 724; 30 C. J. S., Equity, p. 390, § 51; 27 Am. Jur., Infants, p. 827, § 105.

In the case of *Campbell v. Campbell,* 200 S. C. 67, 20 S. E. (2d) 237, the question arose as to whether a minor child can by any form of action maintain a suit against the father for maintenance and support in the absence of statute authorizing it. It was there contended that such relief could be granted only as an incident to a divorce proceeding. In that case the father had brought suit for annulment of his marriage, but upon that issue he was defeated, the decree being that the marriage was valid. Thereupon, the referee to whom the case had been referred recommended that the infant child be made a party in order that support and maintenance might be determined. In upholding the power of the court to award such maintenance and support, independent of the matrimonial dispute which had been determined, the court said:

> "By the great weight of judicial opinion in this country, parents having the ability to do so are under a legal duty, regardless of any statute, to maintain their legitimate minor children, the obligation being sometimes spoken of as one under the common law, and sometimes, as a matter of natural right and justice, and often accepted as a matter of course without the assignment of any reason. 39 Am. Jur., Section 45, Page 664 et seq.; Upchurch v. Upchurch, 196 Ark. 324, 117 S. W. (2d) 339; Murrey v. Murrey, 216 Cal. 707, 16 P. (2d) 741, 85 A. L. R. 1335; Myers v. Anderson, 145 Kan. 775, 67 P. (2d) 542; Doughty v. Engler, 112 Kan. 583, 211 P. 619, 30 A. L. R. 1065. And see to the same effect 46 C. J., § 50, page 1270. * * *
>
> "Courts — and especially courts of equity — should be diligent to discover, and swift to remedy,

the wrongs of helpless children. The parental obligation to support children is a legal one, and can be enforced in equity at the suit of the children appearing by guardian ad litem, even though no statute in express terms allows such an action. This, in our opinion, is the only effectual remedy to insure their support. To so hold does not in any way conflict with the public policy of this State. * * *" *Campbell v. Campbell,* supra (200 S. C. 67, 20 S. E. (2d) 237).

Other cases tending to support the power of court of equity to require support for infant children, are as follows: *Geary v. Geary,* 102 Neb. 511, 167 N. W. 778, 20 A. L. R. 809; *Doughty v. Engler,* 112 Kan. 583, 211 P. 619, 30 A. L. R. 1065; *Craig v. Shea,* 102 Neb. 575, 168 N. W. 135; *Murrey v. Murrey,* 216 Cal. 707, 16 P. (2d) 741, 85 A. L. R. 1335; *Myers v. Anderson,* 145 Kan. 775, 67 P. (2d) 542.

Some of the cases cited refer to the power of equity to require support of illegitimate children, but we know of no principle which places them in a privileged class or which would give to them equitable aid not equally available to legitimate offspring.

■ To summarize our conclusions thus far, the apparent numerical weight of authority may be against the power of a court in habeas corpus to exercise its full equitable jurisdiction and impose collateral conditions as to the support of the child. However, in habeas corpus proceedings the court does, by the weight of authority, exercise the inherent power of equity independent of statute in awarding custody. Again, subject only to a change in the form of the petition, the better authorities recognize the power of equity not only to award custody, but to require of a father that he

support his minor children whose custody has been awarded to the mother.

██ In the case at bar there are other relevant circumstances. Though the duty of a father to support his child does not rest on statute alone, that duty has been expressly declared by statute. O. C. L. A. § 63-301. Divorce does not terminate that duty. *State v. Langford,* 90 Or. 251, 176 P. 197; *Hess v. Hess,* 115 Or. 595, 239 P. 124. Failure without sufficient cause to support a male child under sixteen years of age constitutes a crime, O. C. L. A. § 23-1043, and a divorced father is within the purview of that statute also. *State v. Francis,* 126 Or. 253, 269 P. 878. The same judge who has jurisdiction over infants, either in habeas corpus or in an independent suit in equity, is also, in Clackamas county, vested with juvenile court powers and in that capacity may upon hearing order a parent to support his child. O. C. L. A. § 93-619, (amended Oregon Laws, 1943, p. 258, ch. 209); Oregon Laws, 1941, p. 701, ch. 412.

It ill behooves a modern court of equity to imitate the dry formalism of the early common law courts. As said by Pomeroy, this procedure "furnished a fixed number of 'forms of action.' Every remedial right must be enforced through one of these forms; and if the facts of a particular case were such that neither of them was appropriate, the injured party was without any ordinary legal remedy, * * *" and could have no action. 1 Pomeroy Eq. Jr. 28 (5th ed.), § 21. It was this very legal conservatism which brought about the development of equitable jurisdiction whereby redress may be devised to accommodate rights instead of the Procrustean technique of cutting off rights which do not fit remedies.

 The creation of statutory regulations as to the custody and care of infants does not affect the jurisdiction of a court of equity over infants, 27 Am. Jur., Infants, p. 828, § 109, but on the contrary, rights and duties created by statute may sometimes form the basis for equitable relief. Power being thus vested in the same court and judge to employ multiple procedures for the protection of infants, the case at bar narrows itself down to the question whether the fact that one procedure, the petition in habeas corpus, has been employed to initiate inquiry requires that the court close its eyes to its own inherent power when pleadings and evidence raise issues which, when differently stated, clearly warrant the exercise of such power. There is respectable precedent justifying the exercise of juvenile court powers by a court whose jurisdiction was initiated in habeas corpus. *State ex rel. De Bit v. Superior Court,* 103 Wash. 183, 173 P. 1014.

> "The court does not favor more legal niceties in proceedings or pleadings which involve custody of children." *Pugh v. Pugh,* supra (21 Ala. App. 650, 111 So. 644).

> "The rules regulating the exercise of the chancellor's power are and should be liberally construed." *Tunnell v. Reeves,* supra (Texas, 35 S. W. (2d) 707).

> "The right of a child of tender years to look to its father for support being determined, the matter of procedure presents no great difficulty. See Craig v. Shea, 102 Neb. 575, 168 N. W. 135, and Sanders v. Sanders, 167 N. C. 317, 83 S. E. 489. A court of equity in its historical capacity as guardian of infants can readily devise means for its enforcement." *Doughty v. Engler,* supra (112 Kan. 583, 211 P. 619, 621).

This court has long since applied the foregoing liberal principles in matters of equitable cognizance.

"When jurisdiction is, by the organic law of this state, or by this Code or any other statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by this Code, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code." O. C. L. A. § 13-715. *Patterson v. Horsefly Irrigation District*, 157 Or. 1, 15, 69 P. (2d) 282, 70 P. (2d) 33; *Williams v. Pacific Surety Co.*, 66 Or. 151, 127 P. 145.

"Courts which have a true conception of the philosophy of equity constantly reiterate the fact that equity meets all conditions; that human ingenuity and human affairs can not create a condition which the long arm of the court of equity can not reach if injustice or wrong would otherwise result. See Harrigan v. Gilchrist, 121 Wis. 127 (99 N. W. 909, 936); Rice v. Van Vranken, 132 Misc. 82 (229 N. Y. S. 32)." *Teachers' Ret. Fund Ass'n. v. Pirie*, 150 Or. 435, 445, 46 P. (2d) 105.

In *Re Pittock's Estate*, 102 Or. 47, 201 P. 428, a petition was filed in the probate department of the circuit court claiming that certain property belonging to the petitioner and the deceased as partners, which property was being claimed by the executor as the sole property of the deceased. It was contended by the executor that the relief sought was not available in the probate court. but could be had only by a suit in equity. This court held:

"* * * we are compelled to the conclusion that the Circuit Court in which this proceeding was litigated had jurisdiction to decide all the questions presented, not only those formerly committed ex-

clusively to the County Courts, but also to decide cognate issues rightly joined in that tribunal. The petitioner, if he was a surviving partner, presented his grievance to a court having jurisdiction of the subject matter, and it had authority at his suit to decide the issues arising on the resultant pleadings. The court had no right to ignore the issues presented, although such a result would have been proper under the old regime of the County Courts under the former constitution. The legislature, however, has seen fit under the amended form of the Organic Act, to abolish County Courts in districts having but one county, which shall contain over one hundred thousand population. The act did not lessen the jurisdiction of the Circuit Court in such districts but increased it by the addition of probate jurisdiction, which was formerly vested exclusively in the County Courts. When this litigation was presented to the Circuit Court, that tribunal was acting not only with respect to the probate jurisdiction but also to the general jurisdiction originally vested in such courts." *Re Pittock's Estate,* supra (102 Or. 47, 51, and 52, 201 P. 428).

In *Cousineau v. Cousineau,* 155 Or. 184, 63 P. (2d) 897, 109 A. L. R. 643, we find a suggestive analogy. The California court had entered a decree providing for monthly support for minor children of divorced persons. Thereafter, the parties being in Oregon, the mother of the minor children brought suit against the father, seeking a decree adopting and enforcing the California decree. This court, in a well considered opinion discussed the public policy of this state and said:

"* * * We do not enforce the California decree, as such, in this state, but regard it as the basis for an Oregon decree having the same effect in this state as the California decree has in that state. Our laws authorize us so to do, for if there is anything

novel or unusual about this proceeding—and the Massachusetts and Michigan courts seemed to think so—section 28-1715 [O. C. L. A. § 13-715, supra], Oregon Code 1930, authorizes us to go ahead.* * *'' *Cousineau v. Cousineau,* supra (155 Or. 184, 201, 63 P. (2d) 897).

It may well be conceded that when a writ of habeas corpus is issued in ancient form only, and when issues made by the return relate only to the legality of process whereby a child has been committed and under which it is held, the court will follow the summary procedure upon the analogy of the statutory provisions for habeas corpus *ad subjiciendum* and if the commitment be fair upon its face, will dismiss the writ. *Hills v. Pierce,* 113 Or. 386, 395, 231 P. 652. But where, as in this case, wider issues are presented, both in plaintiff's petition and in the defendant's return or answer, we hold that the full inherent power of equity is available, not only to award custody, but to determine collateral matters concerning support at least under circumstances disclosed in this case. It is no great strain upon the rules of pleading to treat the return on the writ as an answer and cross bill. And the conclusion at which we have arrived is little more than a new application of the old rule that equity, taking jurisdiction for one purpose, will retain jurisdiction to do complete justice. *American Surety Co. v. Hattrem,* 138 Or. 358, 3 P. (2d) 1109, 6 P. (2d) 1087.

Two well considered cases in which the initial jurisdiction of equity was invoked in the form of habeas corpus have held that where the infant child has been awarded to the mother, the right of the visitation of the father may be made conditional upon his furnishing support for the child: *Ex parte Rich,* supra; *Cooke v.*

*Cooke,* 67 Utah 371, 248 P. 83. And see *Castleberry v. Castleberry,* Texas, 120 S. W. (2d) 468 (reversed upon other grounds, 134 Tex. 409, 135 S. W. (2d) 701).

■ The decree of the trial court in the case at bar as in the Rich and Cooke cases, supra, did not expressly direct the father to support the child, but made his right of visitation conditional upon the furnishing of support. Such a provision might perhaps be justified upon the ground that the father instituted the proceedings invoking the jurisdiction of equity and that he who seeks equity must do equity. If equity has no power in this proceeding to make a direct order requiring the father to support his child, then it would seem to us improper to impose support as a condition to the right of visitation. For that reason we have at some length considered the power of the court under the pleadings and evidence to make such a direct order and we find that such power was vested in the trial court in the instant case. If equity does have the power to make a direct order requiring the father to support his child, then by invoking the maxim, "He who seeks equity must do equity," the court would have the power to impose support as a condition to the right of visitation. However, we are reluctant to put a price upon the right of a father to visit his child, assuming that such visitation is for the best interests of the child, and we think that if the duty of support is to be imposed, it should be done by direction rather than by indirection, by an order unconditional rather than conditional. Though this cause is tried *de novo,* we do not feel justified in imposing upon the father by order of this court the duty of support as in matrimonial cases. Such an order would, if made here, impose upon the father duties greater than those set forth in the decree of the circuit

court and if such order is to be made, it should be done by the circuit court upon a remand of the cause with right to either party to amend if deemed necessary so as to more fully invoke the inherent jurisdiction of equity and with the right of either party, if desired, to produce further evidence.

The decree of the circuit court awarding custody of the infant child to the mother is affirmed. In view of the fact that the child is approaching school age, the provision for visitation should be so limited as not to interfere with the right of the mother to keep the child continuously in school. Except as herein stated, the decree as to the extent of the father's rights of visitation is affirmed. The provision making the rights of visitation conditional upon the payment of support is reversed. The cause as it relates to the duty of support is remanded to the circuit court for such further action as may be equitable conformably to this opinion. Neither party will recover costs.