Argued February 28, affirmed April 9, petition for rehearing
denied May 10, petition for review allowed July 31, 1973

IN THE MATTER OF RICHARDSON, RODNEY, WALTER,
NANCY, MINOR CHILDREN.

STATE EX REL JUVENILE DEPARTMENT OF
MULTNOMAH COUNTY, *Respondent, v.*
RICHARDSON ET UX (No. 18,953), *Appellants.*

508 P2d 476

*Nancy Snow Kaza,* Portland, argued the cause for
appellants. With her on the briefs were Legal Aid

Service—Multnomah Bar Association, Inc., and Charles Williamson, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent State of Oregon. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

This is an appeal by the parents of Rodney, Walter and Nancy Richardson, minor children who are wards of the Multnomah County Juvenile Court and who are in the legal custody of the Children's Services Division pursuant to ORS 419.507 (2). The parents moved the juvenile court for an order requiring the Children's Services Division to arrange periodic visits between them and their children. The juvenile court denied their motion on the ground that it had no authority to order the Division to arrange visitation, but could only recommend that it be done. The parents appeal from this denial.

The question presented to this court is that of the power of the juvenile court, once it has placed its wards with the Children's Services Division, to order the Division to make arrangements for visitation. The controlling statute is ORS 419.507, which provides in pertinent part as follows:

"A child found to be within the jurisdiction of the court as provided in subsection (1) of ORS 419.476, may be made a ward of the court. Where a child has been found to be within its jurisdiction,

and when the court determines it would be in the best interest and welfare of the child, the court may:

"(1) * * * [The court may make its own placement by probation or under protective supervision, including, but not limited to, restrictions on visitation, etc.]①

"(2) Place the child in the legal custody of the Children's Services Division for care, placement and supervision.

"(a) The division may place the child in a child care center authorized to accept the child.

"(b) If the child has been placed in the custody of the Children's Services Division, the court shall make no commitment directly to any residential facility, but shall cause the child to be delivered into the custody of the Children's Services Division at the time and place fixed by rules of the division. No child so committed shall be placed in the Oregon State Penitentiary or the Oregon State Correctional Institution.

"(c) Uniform commitment blanks, in a form approved by the Administrator of the Children's Services Division, shall be used by all courts for plac-

---

① ORS 419.507 (1) reads:

"Place the child on probation or under protective supervision. The court may direct that the child remain in the legal custody of his parents or other person with whom he is living or may direct that the child be placed in the legal custody of some relative or some person maintaining a foster home approved by the court, or in a child care center or a youth care center authorized to accept the child. The court may specify particular requirements to be observed during the probation or protective supervision consistent with recognized juvenile court practice, including but not limited to restrictions on visitation by the child's parents, restrictions on the child's associates, occupation and activities, restrictions on and requirements to be observed by the person having the child's legal custody and requirements for visitation by and consultation with a juvenile counselor or other suitable counselor. Restitution for property taken, damaged or destroyed by the child may be required as a condition of probation."

ing children in the legal custody of the Children's Services Division.

"(d) To insure effective planning for children, the Children's Services Division shall take into consideration recommendations and information provided by the committing court before placement in any facility certified by the Children's Services Division.

"* * * * *."

■ The juvenile court in this case took the position that when a juvenile court places its ward with the Division it relinquishes control over such day-to-day administrative matters as visitation. It ruled that while it could recommend visitation (it did, in fact, recommend limited visitation), and while the Division was required to take such recommendations into consideration, the court could not compel the Division to take particular action. We agree with this interpretation of ORS 419.507, and we therefore affirm the order of the juvenile court.

The primary rule of statutory construction is to ascertain the legislative intent. *Haas v. Myers,* 10 Or App 495, 500 P2d 1068 (1972). In this case a brief consideration of the legislative history is useful in determining what that intent was. *Cf. Thies v. Barnes,* 11 Or App 158, 501 P2d 1305 (1972).

ORS 419.507 was substantially amended by the 1971 legislature. In its previous form, subsection (1) was basically the same as it is now, but subsection (2) provided as follows:

"Subject to ORS 179.473 and 419.509, place the child in the legal custody of a public or private institution or agency authorized to accept the child or, if the child is at least 12 years of age, to the Corrections Division. If the commitment is made

to the Corrections Division the court shall make no commitment directly to any juvenile training school, as defined in ORS 420.005, but shall cause the child to be delivered into the custody of the Corrections Division at the time and place fixed by rules of the division. No child so committed shall be placed in the Oregon State Penitentiary or the Oregon State Correctional Institution."

The 1971 legislature amended that subsection to reflect the existence of the newly created Children's Services Division.

In its first form (Oregon Laws 1971, ch 401, § 91), the amended subsection read as follows:

"(2) Subject to ORS 179.473 and 419.509, place the child in the legal custody of a public or private institution or agency authorized to accept the child or, if the child is at least 12 years of age, to the *Children's Services Division*. If the commitment is made to the *Children's Services Division* the court shall make no commitment directly to any juvenile training school, as defined in ORS 420.005, but shall cause the child to be delivered into the custody of the *Children's Services Division* at the time and place fixed by rules of the division. No child so committed shall be placed in the Oregon State Penitentiary or the Oregon State Correctional Institution." (Emphasis supplied.)

It can be seen that this was simply a "housekeeping" measure, which deleted the term "Corrections Division" and substituted for it the term "Children's Services Division."

Subsequently, extensive amendments were made by a subcommittee of the House Ways and Means Committee, and the statute emerged in its present form (Oregon Laws 1971, ch 698, § 2). The subcommittee kept no minutes, so that we have before us no explicit

statement of the reasons which underlay the amendments. However, the legislative intention appears to have been to spell out clearly the scope of authority of the juvenile court and the Children's Services Division.[2]

By referring to ORS 419.507, it is noted that subsection (1) authorizes the juvenile court to go into a great deal of detail in specifying the requirements to be observed if the court places its ward in the custody of any of the persons or facilities set out in that subsection. Subsection (2), on the other hand, contains no such authorization when the court decides to exercise its option of placing the child in the custody of the Children's Services Division. This disparity of authority is so patent that we cannot conclude that it was the product of legislative oversight. Application of the principle of statutory construction, *expressio unius est exclusio alterius,* leads us to the conclusion that the legislature intended to give the court the power of specification in the one instance, while denying that power to it in the other. 2 Sutherland Statutory Construction 412-418, §§ 4915, 4916 (3d ed 1943). *Cf. Cabell et al v. Cottage Grove et al,* 170 Or 256, 281-82, 130 P2d 1013, 144 ALR 286 (1943).

In addition, the language of ORS 419.507 (2)(d) compels the conclusion that the legislature intended to limit the function of the juvenile court vis-a-vis the Children's Services Division to an advisory capacity

[2] The title of ORS 419.507, prior to the 1971 revision, was:

"Child within court's jurisdiction made ward of court; court's power concerning custody of child."

The title that emerged in 1971 reads:

"Child as ward of the court; court's authority over child; Children's Services Division's authority over child."

only in such matters as visitation. That subsection provides:

> "To insure effective planning for children, the Children's Services Division shall *take into consideration* recommendations and information provided by the committing court before placement in any facility certified by the Children's Services Division." (Emphasis supplied.)

Had the legislature intended that the juvenile court have the power to order the Division to take certain action, it could hardly have chosen more inappropriate language.

◼ Our conclusion does not mean that the juvenile court is powerless if it feels that the Division is not acting in the best interest of the children. Despite the grant of legal custody to the Division, the juvenile court retains jurisdiction over the children, and it may at any time remove the children from the Division's custody and utilize the placement options provided by ORS 419.507 (1). In this case, the juvenile court concluded that while limited visitation may be desirable, it is not so desirable as to outweigh the facilities which Children's Services Division offers the children.

Affirmed.

THORNTON, J., dissenting.

The sole question presented here is the proper construction to be placed on the 1971 amendments to statutes dealing with the interrelationship between the juvenile court and the Children's Services Division of the new Department of Human Resources. As I read the prevailing opinion the majority concludes that as to children placed by a juvenile court in the legal custody of the Children's Services Division, the 1971 legislature in amending ORS 419.507 intended to

take away the authority of the juvenile court to control visitation privileges of parents and to vest such authority in the Children's Services Division, subject to the court's power to revoke its previous placement order.

I cannot agree.

First, I can find nothing in ORS 419.474 or elsewhere which indicates that the legislature intended to thus limit the juvenile court's plenary power and responsibility to exercise continuing judicial supervision over children under its control. The provision relied upon by the majority (ORS 419.507 (2)(d)) declares:

"To insure effective planning for children, the Children's Services Division shall take into consideration recommendations and information provided by the committing court *before placement in any facility* certified by the Children's Services Division." (Emphasis supplied.)

As I read the above provision the recommendation of the committing court is advisory only on the matter of "placement." In all other respects the court's authority is the same as before. In my view the above provision does not show a legislative intent to so limit the plenary and continuing authority of the juvenile court under ORS 419.474 to oversee the handling of the child, particularly in such a vital matter as visitation or nonvisitation with the child's parents.

This conclusion is reinforced by two other provisions also enacted by the 1971 legislature:

ORS 419.507 (7) provides:

"The juvenile court shall retain wardship and the Children's Services Division shall retain legal custody of the child committed to it regardless of

the physical placement of the child by the Children's Services Division."

Further, ORS 420.031 (1) provides:

"The granting of legal custody and guardianship over the child's person to the Children's Services Division does not terminate the juvenile court's wardship over the child."

The juvenile court is not an inferior court of limited jurisdiction. To the contrary it is a court of general jurisdiction with full equitable power and jurisdiction. ORS 419.474. As our Supreme Court said in *Bartlett v. Bartlett,* 175 Or 215, 238, 152 P2d 402 (1944):

"The inherent jurisdiction of equity is not limited to the bare matter of the award of custody of an infant. The court will also concern itself over provisions for its support and the jurisdiction of the court is not limited to cases in which the infant has property. All that is necessary is that the infant be made a 'ward of the court' and he becomes such a ward whenever he is brought before the court for any purpose. [Citations omitted.]"

There is nothing in the legislative history of the 1971 amendments to indicate that the legislature intended to cut off the continuing authority of the juvenile court to supervise the handling of its wards. To the contrary these appear to be mere housekeeping amendments made necessary by the creation by the 1971 legislature of the new Department of Human Resources (including a Children's Services Division) within the executive branch of state government. Before an appellate court should reach a statutory construction abrogating a long-established judicial power the legislative intent should be clear. *See,* 50 Am Jur 332-34, 342 et seq., Statutes §§ 340, 347 et seq.

· Secondly, I find it to be an incongruous construction to hold in effect that parents cannot litigate visitation rights before the juvenile court in the instant case.

As we said in *Haas v. Myers,* 10 Or App 495, 501, 500 P2d 1068 (1972):

"* * * The fact that an incongruous result would come from a suggested construction of a statute is another indication that the construction suggested * * * cannot be the one which the legislature intended. [Citing cases.]"

Lastly, I recognize that it may well be that the interests of these children would be best served if the parents were not allowed to visit them at least for the present. This, however, should be for the ultimate decision of the juvenile court after a full hearing, rather than by an administrative official or agency, no matter how sincere and well motivated that official or agency may be.

I would hold that the juvenile court has full power to make the final determination as to whether parents of children placed in the legal custody of the Children's Services Division are to be given visitation rights.