Argued July 1, affirmed July 27, rehearing denied October 5, 1920.

## LARSON v. WELLNER.*

(191 Pac. 671.)

**Habeas Corpus—Custody of Child Properly Given to Grandparents as Against Parent.**

1. In a proceeding between the father and grandparents regarding the custody of a child, court properly awarded custody to the grandparents, who were people of education and refinement, while the father was a man of a violent and uncontrollable temper, and lived in a place of the most primitive type, with a sister who was much given to the use of profane and filthy language in her ordinary conversation.

**Habeas Corpus—Custody of Child may be Taken from Parents by Court of Equity.**

2. A court of equity may take a minor child from a parent and place it in the custody of a grandparent, where it will best protect and safeguard the interests of the child; Section 1314, L. O. L., having no reference whatever to the powers exercised by a court of equity.

> [On welfare of child as primary consideration in determining right to custody of child on *habeas corpus,* see note in **Ann Cas.** 1914A, 740.]

From Multnomah: GEORGE W. STAPLETON, Judge.

Department 1.

On March 17, 1919, Vincent F. Wellner filed a petition in the Circuit Court for Multnomah County for a writ of *habeas corpus,* wherein he sought to obtain the custody of his minor son, Burton Donald Wellner, who was then in the custody of his maternal grandparents, John C. Larson and Julia Larson. On the same day the Larsons filed their complaint in equity, asking that they be awarded the custody of the child. It was then stipulated that the complaint filed by the Larsons should be treated as a return to the writ in the *habeas corpus* proceeding, and to that pleading Wellner filed a reply, and the whole

---

*The question of denial of custody of child to parent for its well-being is discussed in a note in 41 L. R. A. (N. S.) 564.

matter of the custody of the child was tried as one suit. The facts of the case will be found in the opinion. There was a decree in which the custody of the boy was awarded to the grandparents, the Larsons, until he should arrive at the age at which he will be entitled under the law to elect his own guardian. From this decree the plaintiff, Wellner, appeals. Affirmed. Rehearing Denied.

For appellant there was a brief over the names of *Mr. Woodson T. Slater* and *Mr. John Manning,* with an oral argument by *Mr. Slater.*

For respondents there was a brief and an oral argument by *Mr. Guy C. H. Corliss.*

BENSON, J.—In order clearly to understand the contention of the parties, it is necessary to go briefly into the history of the matters leading up to this litigation. On November 24, 1910, Vincent F. Wellner, the plaintiff in the *habeas corpus* proceeding here, was married to Evelyn C. Larson, at Minneapolis, Minnesota, and, with his wife, proceeded at once to his farm in Brule County, South Dakota. In the summer of 1911, the wife's parents, John C. and Julia Larson, purchased a farm, which was located about a mile from that of Wellner, and took up their residence there. On December 14, 1911, early in the morning, Wellner's wife ran across the fields from her home to that of her parents, complaining that her husband, in a fit of rage, had beaten, choked, and kicked her, throwing her out of the house, and tearing her clothing. She never returned to her husband's house, and shortly thereafter she began a suit for divorce, charging cruel and inhuman treatment at his hands, reciting, among other

acts of cruelty, the assault of December 14, 1911. The husband appeared in the case and contested his wife's case vigorously. There was a decree entered in favor of the wife. The decree was not made at the time of the trial, which was had in the month of June, for the reason that it was learned by the court that the wife was then pregnant, and after the birth of the child, which occurred on September 2, 1912, the court, on September 14, 1912, filed findings of fact and conclusions of law in the case, and a decree granting the divorce to the wife. Among others, the court found the following facts:

"That the defendant is a man of extremely violent temper, and when he gets angry is in the habit of treating his wife with great cruelty; that at different times, from a short time after the date of their marriage until December 14, 1911, defendant without any justifiable cause became violently angry with the plaintiff, and called her by vile and degrading names, and on one of said occasions grabbed her by the arm and pushed her violently across the room, and on another occasion angrily wrenched a gasoline lamp pump out of her hand. That on December 14, 1911, without any cause, and over a trifling difference between them as to whether he should be permitted to read a letter which plaintiff had written before she mailed it, the defendant fell into a violent rage and made a physical attack upon the plaintiff, catching her by the hair and throwing her violently to the floor, and got her by the throat, and choked her so as to leave finger-prints upon her neck and throat, which were black and blue four or five days afterwards. At the same time he kicked her out of the house, leaving black and blue marks upon her arms and body, and in the course of his attack tore practically all of the button-holes out of her dress. That the plaintiff thereupon left the family home and has not since returned. That such treatment has endangered the life of the plaintiff, and she cannot continue to live with the defendant with safety."

Shortly after the decree was obtained, Mrs. Wellner, with her babe, accompanied her parents, the Larsons, to Oregon, locating first at Forest Grove, and subsequently at Portland, continuing to live with them until July, 1916, when she married a man by the name of Johnson, with whom she subsequently resided, but still in Portland. In October, 1918, during the epidemic of influenza, Mrs. Johnson and her husband both died of that disease within three days of each other, leaving the child, who is the subject of this controversy, in the care of his grandparents, the Larsons. Thereafter the Larsons instituted proceedings for the adoption of the boy, but were unsuccessful, as the father, Vincent F. Wellner, contested the action, and it was held that the father had not willfully deserted his son, and the case now before us followed immediately.

1. The evidence is more or less conflicting, but after a careful reading and consideration of the entire record, we are satisfied that the trial court, which heard the evidence and made the decree in the divorce proceeding, was fully justified in its findings. We are convinced that Wellner was then a man of violent and uncontrollable temper, and that the intervening years have not materially changed his character in this respect. His farm is a mile and a half from the nearest schoolhouse, which appears to be of the frontier, primitive type. The only woman living in his home is his unmarried sister, sixty-two years of age, who is much given to the use of profane and filthy language in her ordinary conversation, and that she is far from neatness and cleanliness in her housekeeping operations. Upon the other hand, the grandparents, the Larsons, who have had the boy in their home almost continuously

from the hour of his birth, appear to be people of some education and a degree of refinement, having a pleasant and comfortable home of their own, and are fairly prosperous. Their affection for and their devotion to the best interests of the boy are beyond any question, and their home is situated in a city where the opportunities for the education of the child are peculiarly favorable. We are therefore not left in doubt as to what disposition of the matter would be for the best interest of the child.

2. The learned counsel for the father, however, urges that this court is without legal discretion to consider any such problem, and calls our attention to Section 1314, L. O. L., which reads as follows:

"Every guardian so appointed shall have the custody and tuition of the minor, and the care and management of his estate, and shall continue in office until the minor shall have arrived to the age of twenty-one years, or until the guardian shall have been discharged according to law; *provided, however,* that the father of the minor, if living, and in case of his death, the mother, while she remains unmarried, being themselves respectively competent to transact their own business, shall be entitled to the custody of the person of the minor, and to the care of his education."

The concluding clause of the section quoted, consisting of the proviso, is the portion thereof upon which defendant relies to support the contention that neither the trial court nor this court has any discretion in the matter, but is compelled, by the statute quoted, to award the custody of the boy to the father. The section quoted is found in Chapter X, Title XVI, L. O. L., which is devoted to the subject of prescribing the powers and duties of a *County Court* in the appointment and control of guardians of minors. It has no reference whatever to the powers exercised

by a court of equity, and does not undertake to limit the jurisdiction of such a court. This court has always exercised the power, in cases like the present one, to place the minor child in such custody as will best protect and safeguard the interests of the minor. The case of *Barnes* v. *Long,* 54 Or. 548 (104 Pac. 296, 21 Ann. Cas. 465, 25 L. R. A. (N. S.) 172), cited by appellant, expressly asserts the propriety of the exercise of such discretion, where it says:

"Of course, the court in the interest of the child may take it from the parents and make other provisions for it, but there must be some good cause for so doing."

Each case must be governed by its own facts, the court having in mind, at all times, the welfare and interests of the minor. We conclude, therefore, that the trial court reached a proper conclusion, and the decree is therefore affirmed.

AFFIRMED. REHEARING DENIED.

McBRIDE, C. J., and BURNETT and HARRIS, JJ., concur.

