Submitted on briefs November 5, reversed December 16, 1924.

## Re Application of HARRY ASHLEY.

## HARRY ASHLEY *v.* HAZEL WENDOVER.

(231 Pac. 153.)

**Habeas Corpus—Pleading Held to Show That Child's Custody was not Subject of Idaho Decree.**

1. In *habeas corpus* proceeding for infant's custody, where petition and writ stated that defendant was infant's mother and answer alleged marriage of plaintiff and defendant and their divorce in Idaho, without stating child's parentage or that any decree was rendered respecting its custody, and reply was general denial, *held* that pleadings did not show that infant was subject of decree by Idaho court.

**Evidence—Idaho Law Presumed Same as Oregon Law, Making Award of Infant's Custody Subject to Modification.**

2. It is presumed that Idaho law relating to infant's custody is similar to Oregon law in regard to infant being ward of court, which will modify a decree respecting custody and maintenance as different conditions arise, such decree not being final but interlocutory.

**Divorce—Decree of Sister State Awarding Infant's Custody will not be Enforced, Being Subject to Modification.**

3. Since Idaho court may modify decree awarding infant's custody on divorce of parents, such decree is not final, and Oregon courts will not enforce it, not being within the full faith and credit clause of the Constitution.

2. See 9 R. C. L. 476, 477.
3. See 15 R. C. L. 924.

Habeas Corpus—Evidence Held to Show That Welfare of Child Demanded That He be Left With Mother.

4. Evidence in *habeas corpus* to obtain custody of seven year old son, affected with infantile paralysis, *held* to show that child's welfare would be conserved by leaving him with his mother, who was capable of giving proper nurture and maintenance.

See (1) 29 **C. J.** 113. (2) 19 **C. J.** 349; 22 **C. J.** 151, 154. (3) 19 **C. J.** 366, 367. (4) 29 **C. J.** 167.

From Clatsop: J. A. Eakin, Judge.

In Banc.

REVERSED.

For appellant there was a brief over the name of *Messrs. G. C. & A. C. Fulton.*

For respondent there was a brief over the name of *Messrs. Norblad & Hesse.*

BURNETT, J.—This is an application for a writ of *habeas corpus,* the petition in which alleges that

"Erle Ashley is now detained, confined and restrained of his liberty by Hazel Ashley, his mother, at Seaside, Oregon."

After alleging that the restraint is not by virtue of any process of any court, the petition goes on to say:

"That the cause or pretense of such imprisonment and restraint, according to the best knowledge and belief of your petitioner, is the failure and refusal of said Hazel Ashley to comply with the terms of a certain divorce decree entered in her favor in the District Court of Nez Perce County, State of Idaho, awarding the custody of said Erle Ashley alternately to the petitioner herein and to said Hazel Ashley for the period of one year to each.

"That said imprisonment, detention, confinement and restraint is illegal and that the illegality consists in this to-wit: That heretofore, to-wit, on the 16th

day of December, 1920, a decree of divorce was duly entered in the District Court of the State of Idaho for the County of Nez Perce in a certain suit for divorce in which said Hazel Ashley was plaintiff and in which the petitioner herein, Harry Ashley, was the defendant. That said decree of divorce was obtained by default, but that the said District Court provided that the said Harry Ashley should have the custody of Erle Ashley for a period of one year from the 16th day of December, 1920, until the 16th day of December, 1921, and that thereupon the said Hazel Ashley should have the custody of said Erle Ashley from the 16th day of December, 1921, until the 16th day of December, 1922, and so on giving each of the parents the custody of said minor child alternating for a period of one year. That by virtue of said decree petitioner herein became entitled to the care and custody of said minor child on the 16th day of December, 1922, but said Hazel Ashley has ever since refused, and still refuses, to allow petitioner herein to take said Erle Ashley, and has refused to surrender said Erle Ashley to the petitioner herein.

"That the illegality of the imprisonment or restraint has not been already adjudged upon a prior writ of *habeas corpus*, to the knowledge or belief of your petitioner."

After vain efforts to set aside the service and to quash the writ, the defendant answered without denying any of the allegations whatever of the petition or the writ. Affirmatively, the answer states that Erle Ashley at the institution of this proceeding was under the control of the defendant at the City of Seaside, in Clatsop County, Oregon, and continues as follows:

"That the facts pertaining to the possession and control by defendant of said minor are as follows, namely:

"(1) That heretofore, and on June 27, 1915, this defendant and the petitioner in said writ, Harry Ashley, were married at the City of Clarkston, in

Asotin County, State of Washington, and continued to be husband and wife up to and until the 16th day of December, 1920, when, by decree of the District Court of the State of Idaho, for the County of Nez Perce, in a suit brought by this defendant, as plaintiff, against the petitioner herein, as defendant, for a divorce, by consideration of said Court, a decree of divorce was entered dissolving the bonds of matrimony between this defendant and petitioner, and such decree has never been set aside or vacated.

"That thereafter, and on the 22nd day of June, 1921, at Lewiston, Idaho, this defendant married J. H. Wendover, and ever since have been and still are husband and wife.

"That heretofore, and on January 14, 1922, this defendant and her husband and said minor, Erle Ashley, took up their residence in the State of Oregon.

"That defendant and her husband, J. H. Wendover, are each native born citizens of the United States and are now and have been since January 14, 1922, actual, *bona fide* residents of the State of Oregon, residing at the City of Seaside, in Clatsop County, in said state which is their permanent home."

The answer also declares in substance that about September 1, 1922, the minor, Erle Ashley, was attacked by infantile paralysis, describing the effects thereof, and asserting that the defendant is the only proper and competent person to care for the child; and that he requires continuously such care as only a mother can possibly give to him. It is asserted that the plaintiff is not a competent or proper person to have the care, custody or control of the infant; that the plaintiff has no one to take care of the child, or give it the attention necessary to cure him of the effects of said infantile paralysis; that the plaintiff has no home suitable for the care and nurture of such child, and no means of educating him and that the plaintiff is a penurious and selfish

man, and will not give the child proper care. On her part, the defendant avers that she is fully able to take care of the child, educate him, feed him, nourish him and clothe him, and is the only proper person to do so. The total reply is here quoted:

"Comes now, Harry Ashley, the petitioner herein, and replying to the defendant's answer on file herein denies each and every allegation therein contained and the whole thereof."

After a hearing before the Circuit Court on the issues thus formed, a decree was there entered to the effect that the defendant discharge Erle Ashley from her custody and deliver him to the petitioner; that the latter have the care and custody of the child in accordance with the terms and conditions of a divorce decree entered in the District Court of the State of Idaho, wherein Hazel Ashley was plaintiff and Harry Ashley was defendant, unless changed, altered or modified by the District Court of that state. The defendant in the writ has appealed.

1. Neither the petition for the writ nor the writ itself gives any history of the parentage of the child except to say that the defendant is his mother. It is not stated that the child is the fruit of any marriage between Harry Ashley and the defendant Hazel Ashley, later Hazel Wendover. Neither is it averred in the petition that the petitioner and the defendant were ever married. The answer, indeed, alleges that on June 27, 1915, the defendant and petitioner were married in the State of Washington, and so continued to be husband and wife up until December 16, 1920, at which date by decree of the District Court of Idaho for the County of Nez Perce, in a suit brought for divorce by the defendant as plaintiff against the petitioner as defendant, a decree therein was entered

dissolving the bonds of matrimony between the defendant and the petitioner but the answer does not state anything about the parentage of the child, or that any decree was rendered respecting his custody. Moreover, the reply traverses all the allegations of the answer to the writ; that is to say, the petitioner denies, not only his marriage to the defendant, but also that any decree was rendered between them. On the face of the pleadings, therefore, it does not appear that there is any jurisdiction in the Idaho District Court to make any adjudication respecting the custody of the child as against the mother. For aught that appears in the pleadings, the child may have been the offspring of the defendant here by some former marriage, for she is the only one to whom the pleadings trace his lineage. Under the circumstances it is clear, so far as the record is concerned, that neither court would have jurisdiction to grant custody of him to the plaintiff.

2. Conceding for the sake of the argument however, that the child was in very truth the offspring of the former marriage between the parties, the petitioner and the defendant, yet it is not stated in the pleadings that the decree of the Idaho court respecting the custody of the child was final or conclusive. We presume, in the absence of any pleading, that the law of Idaho on that subject is the same as our own. In this state under such conditions, the child of a marriage which has been dissolved continues to be the ward of the court, and from time to time after the rendition of the decree, the court, as different conditions arise, may modify the previous direction respecting the custody and maintenance of the child and give it exclusively to either party. This is so well settled that citation of precedents is unnecessary. We have then, this situa-

tion; that so far as disclosed by the record the adjudication of the Idaho court respecting the custody of the child was not final but temporary and in a sense interlocutory, subject to any modification that might be made subsequently and under changed conditions by the court which rendered it.

3. The plaintiff in the writ relies upon the full faith and credit section of the Constitution of the United States, reading thus:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."

In *Levine* v. *Levine*, 95 Or. 94 (187 Pac. 609), Mr. Justice HARRIS lucidly treats of the effect of the full faith and credit clause upon the judgments and decrees of sister states, saying:

"As already stated, the Minnesota decree, to the extent that it is final and not subject to modification, is entitled to the protection of the full faith and credit clause of the Federal Constitution and must be enforced in this state. If, however, a part of the Minnesota decree is not final but is subject to modification by the court which rendered it, then neither the United States Constitution nor the principle of comity compels the courts of this state to enforce that part of the decree, for no court other than the one granting the original decree could undertake to administer relief without bringing about a conflict of authority."

True enough, the Levine case was an effort in this state to recover unpaid installments of alimony allowed in a divorce case in Minnesota to the plaintiff here, but the principle is the same. The court denied relief in this state to the plaintiff, because the

113 Or.—4

allowance of alimony was subject to revision at any time by the court which originally allowed it, and hence the decree was not final in that respect and the court here refused to allow a recovery because it was not a final judgment upon which the plaintiff relied. So, in the instant case, assuming the law of Idaho to be the same as our own, in the absence of contrary averment, the matter of custody of a child involved in a divorce suit is always in the bosom of the court of whom the child is a ward, and consequently no such decree is final and conclusive against subsequent modification. For this reason the courts of this state under the doctrine of *Levine* v. *Levine* will not undertake to enforce the interlocutory decrees of the courts of a sister state. This is not a disregard or impeachment of a judicial proceeding of a sister state, but is giving to it here all the faith and credit it possesses there. We cannot assume to enforce here any foreign decree which may be changed at any time by the court which pronounced it. It follows on this branch of the subject, that inasmuch as the plaintiff herein has not shown a final decree respecting the custody of the child, the courts of this state will not undertake to aid him.

4. Still further, it appears from the evidence after having been pleaded by the defendant, that the child and its mother are residents of this state and as laid down by Mr. Justice BEAN in *Griffin* v. *Griffin*, 95 Or. 78 (187 Pac. 598), quoting from the syllabus:

"The state, as *parens patriae*, has the undoubted right to determine the status or domestic and social condition of infant citizens domiciled within its territory."

A reading of the testimony in the instant case convinces us that the child is delicate and more or less

afflicted with infantile paralysis. It is of the age of seven years, and is in the custody and care of its mother who appears from the testimony to be amply capable of giving it proper nurture and maintenance. On the other hand, the defendant lives in the country in Idaho where the climate is severe in the wintertime and as in *Larson* v. *Wellner,* 97 Or. 513 (191 Pac. 671), his farm is a mile from the nearest schoolhouse, and the only womanly care that the child would receive would be from the mother of the petitioner who is upwards of sixty years of age. It is also shown that the petitioner has never contributed anything to the support of the child and was penurious and niggardly in his habits during all the times mentioned in the pleadings. In such cases the welfare of the child is the principal motive of the decision of the court, and on the actual merits of the case we think the testimony shows that the welfare of the child would be best conserved by leaving him with his mother.

For three reasons, therefore, the judgment of the Circuit Court must be reversed and the writ dismissed: 1. It does not appear by the pleadings that the child was legitimately the subject of decree by the Idaho court; 2. It does not appear that the decree about the child by the Idaho court was final, but, on the contrary, was in a measure interlocutory and subject to revision by that court at any time upon proper showing; and, 3. By virtue of their equitable power, the courts of this state will care for the welfare of its minor citizens domiciled here, actuated by the principle that, respecting children of tender years especially, the welfare of the child is of controlling importance. The judgment of the Circuit Court is reversed and the writ dismissed.

REVERSED AND WRIT DISMISSED.