Argued October 5; affirmed November 3; petition for rehearing
denied November 16, 1948

## CROWELL *v.* CROWELL
### 198 P. (2d) 992

*Paul R. Harris, of Portland,* argued the cause and
filed a brief for appellant.

*C. L. Marsters,* of Dallas, argued the cause for respondent. With him on the brief was Philip Hayter, of Dallas.

Before ROSSMAN, Chief Justice, and BELT, BAILEY and BRAND, Justices.

BELT, J.

This is a habeas corpus proceeding to determine the custody of a little girl named Mary, about eight years of age. From a decree dismissing the writ and awarding the absolute custody of the child to the mother, the plaintiff-father appeals.

The plaintiff and the defendant were married in Tucson, Arizona, in 1931, and after residing there for about ten months, moved to Texas where they resided for a period of nine years. While in Texas, Mary was born on February 21, 1940. According to the defendant, she was subjected to brutal treatment by her husband and was compelled to leave Texas with her baby and go to Elton, Oklahoma. She says that her husband kicked, struck and choked her at a time when she was pregnant with child. On one occasion some of her ribs were "torn loose" and she was obliged to go to a hospital for treatment. Police officers were once called to the home to afford her protection. Plaintiff admits that he struck his wife but asserts that she hit

him first. He seems to have had a sort of cave-man philosophy that it was right to chastise his wife when, in his opinion, she did not behave. When she left plaintiff in Texas, she says that she was "absolutely through" and was determined that neither she nor her baby would ever see him again. When the defendant-mother arrived in Oklahoma, she was destitute and was obliged to earn her living by washing dishes in a restaurant. When the plaintiff followed her to Oklahoma, she instituted a suit for separate maintenance in that state against him and succeeded in obtaining personal service. The court in its decree not only awarded her separate maintenance but gave her the absolute custody of the child. From this decree the plaintiff did not appeal. On the pretext of showing the baby to a friend, the plaintiff surreptitiously took the child to Texas. A few months thereafter, plaintiff commenced a suit for divorce against his wife and obtained jurisdiction by substituted service. The court in April, 1942, entered a decree of divorce in his favor and awarded to him the absolute custody of the child. The record does not disclose upon what ground the plaintiff claimed the right to a divorce. Was it extreme cruelty on the part of his wife? Defendant contends that she had no knowledge of this divorce decree until many months after it was entered. When the plaintiff took the child from Oklahoma, the defendant-mother was without funds to enable her to take the necessary legal steps to obtain possession of her daughter. She went to work, however, and after attending college in Oklahoma, obtained a Bachelor of Arts degree. Later she taught music in a high school. When she had sufficient funds, she returned to Texas and succeeded in getting possession of her child and

bringing her back to Oklahoma without the knowledge or consent of the plaintiff. After she returned to Oklahoma, plaintiff instituted a habeas corpus proceeding to determine the legal custody of the child. After hearing, a decree was entered in November, 1942, awarding custody of the child to the mother for a nine-months' period and custody to the father for three months. Before the expiration of the nine-months' period, the mother, in defiance of such decree, took the child with her to Oregon in February, 1943, where she has continuously resided ever since.

After the defendant left Oklahoma, the plaintiff succeeded in obtaining a modification of the decree entered in that state in the habeas corpus proceeding, so that he was awarded the absolute custody of the little girl. With the aid of detectives and police officers, plaintiff finally located the defendant and her child at Portland, Oregon, where she was working as a welder in a shipyard. Plaintiff came to Oregon armed with warrants for arrest of defendant and, on the day before Thanksgiving in 1944, surreptitiously obtained possession of the child. After "touring" California and Texas—he was selling patent medicines—plaintiff took the child back to Oklahoma. Plaintiff, having no home of his own, placed the little girl with a private family under highly unfavorable conditions. On complaint of the Commissioner of Charities and Corrections in Oklahoma, the child was taken from the plaintiff and placed in the "Sunbeam Home," a public institution. When the defendant was notified by some of the officers of the child welfare commission about this situation, the mother returned to Oklahoma and instituted habeas corpus proceedings to obtain possession of her child. After a full and complete hearing, a decree was

entered awarding her absolute custody of the child. Thereafter, she returned to Oregon with her child and earned a livelihood by teaching school first in eastern Oregon and then at Valsetz, in Polk county, Oregon. Plaintiff, however, did not falter in his efforts to get possession of little Mary. He returned to Oregon and commenced the instant habeas corpus proceeding. In the petition for the writ, the plaintiff prays that he be given custody of this little girl, or, in alternative, (1) Place the child in a home where she can be visited by both parents, or (2) that defendant be placed under bond, conditioned that plaintiff shall have the right of reasonable visitation of the child in the state of Oregon.

So it was that little Mary—the innocent victim of it all—was subjected to this interminable litigation. In some instances she was spirited away in utter defiance of court orders and decrees, first by one parent and then the other. The child now approaches womanhood and we think it is about time, in the interests of her welfare, that this bitter controversy should end.

■■■ Plaintiff, invoking the full faith and credit clause of the federal constitution, asserts that his right to custody of the child has been adjudicated by the court in Texas in 1942. We do not agree that such decree is controlling. It was not a final decree. The Texas court was concerned with the then known existing facts. Since that decree was rendered, there has been a change of circumstances materially affecting the welfare of this child, and the court in Oregon, acting as parens patriae, was free to do what it deemed best to protect the interests of this child. The welfare of the child is the paramount issue. Mary is something more than a chattel. Property rights are not involved. When a court has the grave responsibility of determining the custody of a

child, its welfare is the guiding star. Neither technicalities nor strict rules of law have any place in such proceeding. *Bartlett v. Bartlett,* 175 Or. 215, 152 P. (2d) 402; *Friendly v. Friendly,* 137 Or. 180, 2 P. (2d) 1; *Barnes v. Lee,* 128 Or. 655, 275 P. 661; *Ashley v. Wendover,* 113 Or. 43, 231 P. 153; *Griffin v. Griffin,* 95 Or. 78, 187 P. 598. These authorities clearly establish that the full faith and credit clause of the federal constitution has no application to the factual situation involved herein.

■ The extra-territorial effect of foreign decrees involving the custody of minor children has often been considered by courts in various jurisdictions, and there is marked diversity of opinion. All courts are in accord that a decree of a sister state is not conclusive in other states where there has been a material change of circumstances affecting the welfare of the child. 17 Am. Jur., Divorce and Separation, 521, § 688. Notes: 160 A. L. R. 400, 116 A. L. R. 1299, 72 A. L. R. 441, 20 A. L. R. 815. In some jurisdictions, full faith and credit is not given to such foreign decrees in determining what is best for the welfare of the child, even though there has been no substantial change of circumstances. Particularly is this true when the mother and child have established a bona fide residence in the state. The fact that the original decree is based on substituted service is also a matter for consideration.

Under any view, we ask why the plaintiff should be entitled to rely upon the Texas decree of 1942, in view of the decree in the habeas corpus proceeding rendered in Oklahoma in March, 1945, wherein the mother was awarded the absolute custody of this child. If the full faith and credit doctrine is to be invoked—and we think, in the light of the record, it has no appli-

cation—the last Oklahoma decree and not that of Texas would control.

■ There is not a scintilla of evidence against the moral character of the defendant-mother. She has maintained undying devotion to her baby under adverse circumstances. Her courage, intelligence and industry speak well for the future of this little girl who soon will approach womanhood. Clearly she is entitled to the custody of this child. Plaintiff has no home of his own. His past conduct demonstrates that he is unstable, erratic and highly emotional—to say nothing of his other "frailties." His claim for custody has slight merit.

■ The only serious question is whether the plaintiff should be given the right of reasonable visitation. Ordinarily, the natural right of a father to visit his child would be recognized by any court of equity. We have given this phase of the case careful consideration. The able and experienced circuit judge who saw and heard these parents concluded that under the unusual circumstances as disclosed by this record, it would be detrimental to the welfare of the child to accord the plaintiff the right of such visitation. We are not prepared to say that such conclusion is wrong. In all probability, a visitation would result only in turmoil and strife. We are not unmindful that the father has been throughout the years unceasing in his efforts to see his little daughter. Was he motivated by love for his child? Or was he merely harassing and annoying his former wife, who would not return to live with him again?

The decree dismissing the writ and denying the right of reasonable visitation is affirmed. Defendant is entitled to costs and disbursements.