Argued January 3, reversed with directions February 20, petition
for rehearing denied March 19, 1952

# In re THE APPLICATION OF HELEN A. LORENZ
# FOR A WRIT OF HABEAS CORPUS
# LORENZ v. ROYER et ux.

241 P. 2d 142
242 P. 2d 200

*Kenneth E. Shetterly,* of Dallas, and *Philip Hayter,* of Dallas, argued the cause and filed a brief for appellant.

*Lawrence N. Brown,* of Salem, and *Bruce Spaulding,* of Portland, argued the cause and filed a brief for respondents.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, WARNER and TOOZE, Justices.

## TOOZE, J.

This is a habeas corpus proceeding to determine the custody of James H. Royer, now eleven years of age, and Thomas W. Royer, now nine years of age, minor sons of Helen A. Lorenz and her former husband, Robert W. Royer. The proceeding was instituted by Helen A. Lorenz, as plaintiff, against Robert W. Royer and Ima Royer, his wife, as defendants. From a decree dismissing the writ and awarding custody of said minor children to defendant Robert W. Royer, plaintiff appeals.

We shall hereafter refer to Robert W. Royer as defendant. The plaintiff and defendant were married at Fort Wayne, Indiana, on August 4, 1940. This was plaintiff's first marriage and defendant's second. In 1941, James H. Royer and, in 1943, Thomas W. Royer, were born as the lawful issue of this marriage. On

July 8, 1944, a daughter was born as the lawful issue of said marriage, but her custody is not involved in this litigation.

Defendant is the son of the Reverend Mr. James H. Royer. The Reverend Mr. Royer is a Methodist clergyman, having been such since 1914, and presently is located at Falls City, in Polk county, Oregon. However, most of his ministerial life was spent in the Northern Indiana conference. Before coming to Oregon in 1947, he and his wife lived for a short time at Lansing, Illinois, having moved there from Indiana. Defendant now is approximately 36 years of age.

Plaintiff and defendant separated in October, 1943, at which time defendant went to Elkhart, Indiana, to work, and plaintiff and her children remained in Fort Wayne. During most of their married life, plaintiff and her husband lived with his parents, and at times lived with her parents, in and near Fort Wayne. Plaintiff was compelled to work to support herself and family, sometimes including her husband. When the parties were living with defendant's parents, defendant's mother cared for the children during the day while plaintiff was working.

On September 28, 1944, Helen A. Royer (now Lorenz), as plaintiff, filed suit for divorce against Robert W. Royer, as defendant, in the superior court of the state of Indiana for Allen county. At that time and at all times prior thereto subsequent to their respective births, said minor children were and had been residents of and domiciled in Allen county, Indiana, and were then, and since the separation of plaintiff and defendant in October, 1943, had been, in the exclusive custody of plaintiff in said Allen county, and so remained in her custody until April, 1945, as hereafter mentioned. Defendant was per-

sonally served with summons in said suit within the state of Indiana and appeared therein by his attorney, one Judge Hildeman, of Fort Wayne. Custody of said children pendente lite was awarded to plaintiff by the court. On January 19, 1945, defendant was brought before the court in said suit in nonsupport proceedings.

On June 1, 1945, the following decree was entered in said court and suit (omitting formal parts):

"BE IT REMEMBERED, that on the 1st day of June A.D., 1945 the same being the 53rd Judicial day of the April Term, 1945, of said Court, held at the said Court House, before the Honorable Judge aforesaid, the following court order was made in the above entitled cause by said Court to-wit:

"Comes now the defendant herein and files the answer of no information and denial, which answer is in the following words and figures, to-wit: (H.I.).

"Come now the parties herein, by counsel, and this cause now being at issue, the same is submitted to the Court for trial, and the Court having heard the proofs and evidence and being duly advised in the premises, now finds that the allegations contained in said plaintiff's complaint are true and that the plaintiff should be granted an absolute divorce from the defendant, at costs to said defendant.

"The Court further finds that said plaintiff is a proper and suitable person to have the care, custody and education of the minor children named in the complaint and is entitled to their care and custody until the further order of this Court.

"The Court further finds that said defendant should be given the privilege of visiting minor children at reasonable times and to have the children with him for periods as agreed by and arranged by said parties.

"It is, therefore, ordered, adjudged and decreed by the Court that the bonds of matrimony existing between the plaintiff and the defendant hereby are dissolved, and the said plaintiff, Helen A. Royer, be and she hereby is granted an absolute divorce from the said defendant, Robert W. Royer.

"It is further ordered, adjudged and decreed by the Court that the said plaintiff have the care and custody of minor children, James H., aged 4 years, Thomas W., aged 2 years and Helen K., aged 11 months, until the further order of this Court.

"It is further ordered, adjudged and decreed by the Court that the said defendant pay into the office of the Clerk of this Court the sum of Fifteen ($15.00) dollars per week for the support of said minor children.

"It is further ordered, adjudged and decreed by the Court that the said defendant be and he hereby is given the privilege of visiting minor children at reasonable times and to have children with him for periods as agreed by and arranged for by said parties.

"It is further ordered, adjudged and decreed by the Court that the said defendant pay the costs of this action as herein laid out and expended."

This decree has not been modified or changed in any respect since its rendition.

During the pendency of the above suit, plaintiff was compelled to continue her employment in order to support herself and the children. She employed others to care for the children in the daytime while she was working. In the spring of 1945, she procured an unfurnished house in need of repairs, to serve as the future home of herself and the children. The persons who had been caring for her children were unable to continue such care, and during the period of time necessary to put the new home in condition for occupancy,

it was essential that plaintiff arrange for the temporary care of her children elsewhere. She wrote defendant, suggesting he might take the children to the home of his parents to be cared for until the new home was ready. Defendant's parents then resided at Lansing, Illinois, about 100 miles from Fort Wayne and just a mile over the Indiana-Illinois boundary line. Thereupon, and during the forepart of April, 1945, defendant took the two boys to the home of his parents.

In August or early September, 1945, after the divorce decree had been entered, plaintiff went to the Royer home in Lansing and demanded custody of her children. Defendant had knowledge of the provisions of the divorce decree. He told plaintiff that the Indiana decree had no effect in Illinois and refused her custody. Plaintiff returned to her home, consulted her attorney, and then returned to Lansing to get the children. The children were not then at the Royer home, and defendant's mother refused to inform plaintiff of their whereabouts.

It appears that defendant removed the children from Illinois to Wisconsin, and later to Oregon, arriving in this state February 6, 1946, and taking up residence at Turner, in Marion county. He moved from Turner to West Salem, in Polk county, where he now resides.

Defendant in the meantime married one Virginia Groff of Millersburg, Indiana, and one child was born of this union. In 1948, Virginia returned to Indiana with her child, and in January, 1950, was awarded a decree of divorce from defendant and the custody of her child by an Indiana court. In August, 1950, defendant married Ima Scheid, his present wife. For two years prior to his marriage to Ima, the children were cared for by defendant's parents at Falls City.

In passing, we note the fact that for many years prior to 1948, defendant was an alcoholic. Perhaps all his matrimonial difficulties may be traced to this disease from which he suffered. In 1948, he joined Alcoholics Anonymous at Salem and since that time, according to his testimony, has not used alcoholic liquor. He is to be commended for effecting his own cure, and we do not feel it amiss to express the hope that the cure is permanent. There is no question that defendant's present wife, a registered nurse, is a splendid, refined woman, and no doubt will be of much encouragement and help to him.

After disappearing with the children in 1945, defendant never wrote or advised plaintiff of their whereabouts. Plaintiff sent gifts for her children, but was compelled to do so through defendant's parents. Defendant admitted on the trial that, although the frequent gifts plaintiff sent for the children were received, he did not tell the children from whom they came.

Plaintiff married William C. Lorenz in June, 1946. He is a cabinet finisher and had been steadily employed with the same firm for ten years prior to the trial of this case. Plaintiff and her present husband own their own home, which is situated on three acres of land and located on Route 2, Churubusco, Indiana.

In 1947, with the assistance of her husband, plaintiff employed a private detective agency to locate her children. They were located in the summer of 1947, at Turner, Oregon. It was not until the summer of 1950 that plaintiff and her husband were financially able to come to Oregon and prosecute proceedings to obtain custody of the children. They arrived in Oregon in early September, 1950, and on September 12, 1950, plaintiff, in the home of defendant's parents, saw her

children for the first time since April, 1945. This proceeding was instituted, and the trial was held September 19, 1950.

It is obvious that, after being separated from her children for the period of time involved here and the children not having been taught to remember and love her, plaintiff confronted a rather delicate situation when the children were first presented to her. They did not know her. This situation is described by defendant as follows:

"Q Do you know what was said?
"A Do you mean, to the children?
"Q Yes.
"A Yes. She asked the children if they knew her. Of course, after the period of time and being small children, they didn't. She talked to them a little while. Of course I realized that the relations were pretty well strained, and I realized her position in being in, say, enemy territory, and having to see her children under those circumstances. I appreciated that."

■ On the trial no evidence whatever was offered to show that the mother of these children was an unfit person to have their custody. In fact, no evidence was offered as to any change in conditions following the entry of the decree of divorce in Indiana, except the conditions created by defendant's surreptitious removal of the children from the jurisdiction of the Indiana court and his keeping them outside that jurisdiction, unless his alleged reformation be considered such a change. An attempt was made to attack plaintiff's conduct prior to the divorce—even prior to her marriage to defendant—but all the information defendant offered along this line was within his knowledge, and the exhibits were in his possession,

long before the divorce suit was instituted in Indiana. The trial court properly rejected this evidence. Plaintiff's fitness to have the custody of her children was determined by the superior court of Allen county, Indiana, at the time the divorce decree was entered.

2, 3. On the trial of this case, as shown by the record, the able trial judge assumed that this proceeding was equitable in nature, and that the paramount issue before the court was the welfare of these children, as is usually the case in such proceedings. It is true, as we said in *Ex parte Quinn,* 192 Or 254, 233 P2d 767, 771, that "ordinarily, a proceeding by habeas corpus involving the custody of a minor child is deemed to be an equitable proceeding, and in all such cases the polar star principle guiding the court in its final determination of the issues is the best interests and welfare of the child." However, the remedy by habeas corpus is available to test the legality of the custody of a child in certain circumstances where the question of jurisdiction, rather than the welfare of the child, is of primary importance. This type of proceeding is brought pursuant to the provisions of the statute governing the writ of habeas corpus. §§ 11-401 to 11-443, inclusive, OCLA. It is not the usual equitable proceeding heretofore noted.

In *Armstrong v. Vancil,* 169 Or 320, 327, 128 P2d 951, Mr. Justice BRAND, speaking for the court, said:

"Although a court in habeas corpus has broad powers of inquiry as to the character and qualifications of those seeking custody of the infant and although such powers closely resemble those of a circuit court in divorce proceedings, where the custody of infants is involved, it does not follow that the court in habeas corpus will always exercise its broad discretionary powers. Judicial discretion is guided and governed by rules of law.

'The court cannot refuse an application for the custody of a child by a person who has the legal right to the custody if the applicant is a fit person.' In re Henkle (supra) [153 Or 337, 56 P2d 343]. Bryant v. Dukehart, 106 Or. 359, 210 P. 454 (1923)."

Also see *Ex parte Quinn,* supra; *Ex parte Bowers,* 78 Or 390, 153 P 412.

The superior court of the state of Indiana for Allen county had jurisdiction to entertain plaintiff's suit for divorce and to award a decree therein. § 3-1203, Burns Indiana Statutes 1933; ch. 5, title 4, Burns Indiana Statutes 1933. The court also had jurisdiction to award custody of minor children and to provide for their support during the pendency of a suit for divorce. § 3-1216, Burns Indiana Statutes 1933. By § 3-1219, Burns Indiana Statutes 1933, it is provided:

"The court, in decreeing a divorce, shall make provision for the guardianship, custody, support and education of the minor children of such marriage."

■ We are required to take judicial notice of the law and statutes of Indiana. Section 2-503, OCLA, provides:

"* * * Every court of this state shall take judicial notice of the constitution, common law, civil law and statutes of every state, territory and other jurisdiction of the United States."

■ Under the law of the state of Indiana, the jurisdiction of the divorce court over the custody of minor children is a continuing jurisdiction. It may modify its decree at any time during the minority of the children as changed conditions may warrant, the welfare of the children being of paramount consideration. *Manners v. State,* 210 Ind 648, 5 NE2d 300;

*Zirkle v. Zirkle,* 202 Ind 129, 172 NE 192; *Stonehill v. Stonehill,* 146 Ind 445, 45 NE 600; *Bryan v. Lyon et al.,* 104 Ind 227, 3 NE 880, 54 AR 309; *Tobin v. Tobin,* 29 Ind App 382, 64 NE 624.

■ The order of the court in Indiana as to the custody of the children is binding upon the parties until it is modified or set aside. *McDonald v. Short,* 190 Ind 338, 130 NE 536; *Stone v. Stone,* 158 Ind 628, 64 NE 86; *Williams v. Williams,* 13 Ind 523.

■ As previously observed, plaintiff, defendant, and their minor children all were domiciled in the state of Indiana at the time the suit for divorce was commenced. The divorce court obtained jurisdiction over all the parties and the subject matter of the suit. It awarded custody of the children pendente lite to plaintiff, and she assumed such custody. This order of custody was not changed or modified prior to decree. In its final decree, custody was awarded to plaintiff. Defendant in the meantime had taken the children into the state of Illinois under the circumstances hereinabove noted, and they were not physically in the state of Indiana at the time the final decree was entered. However, the temporary removal of the children to the state of Illinois did not defeat the jurisdiction of the Indiana court to award their custody.

In 27 CJS, Divorce, 1299, § 333c, the rule is stated:

"* * * Where the court has jurisdiction of the parties and subject matter, removal of the children of the parties from the state prior to the decree does not deprive the court of jurisdiction to fix the custody of such children or disentitle the decree to recognition in another state."

See *Maloney v. Maloney,* Cal App2d 278, 154 P2d 426; *Hughes v. Hughes,* 180 Or 575, 578, 178 P2d 170; *State v. Rhoades,* 29 Wash 61, 69 P 389.

 An infant, being non sui juris, is incapable of fixing or changing his domicile, unless he has been emancipated by his parents; and even then, according to some authorities, he is unable to make such change. During minority, the domicile of an infant continues to be the same as that of the person from whom he took his domicile of origin and changes only with the domicile of that person. 28 CJS, Domicile, 21, § 12b (1). In 28 CJS, Domicile, 21, § 12b (2), we read:

"The domicile of a legitimate child, during minority and until emancipation, ordinarily follows that of the father, while the latter is alive, regardless of the consent or desire of the parties, and even though the child is not living with him. The mere separation of the parents does not affect the application of this rule; *but, where they are separated by judicial decree or divorce, the minor's domicile follows that of the parent to whose custody it has been awarded.*" (Italics ours.)

See also Restatement, Conflict of Laws, 57, § 32; *Glass v. Glass,* 260 Mass 562, 157 NE 621, 53 ALR 1157, and note.

 The plaintiff in the case having been awarded the custody of the minor children of herself and defendant, her domicile fixes that of the children. The children could not change that domicile themselves, nor could it be accomplished by anyone else other than plaintiff, so long as she lives, and her legal right to custody continues. It ensues, therefore, that the domicile of these children is now, and continuously since their respective births has been, in the state of Indiana. They never acquired a domicile in Oregon; their residence here is necessarily temporary in character. It cannot become permanent during their minority and while plaintiff lives, unless and until the decree of

the Indiana court is modified so as to make that possible, or the plaintiff herself acquires a domicile here. The question is one of status. No court, except the court of domicile, has jurisdiction to change that status. Restatement, Conflict of Laws, 212, § 147, and Comments.

■ When the status of a person has been fixed by a court of competent jurisdiction, the decree of such court is entitled to full faith and credit in each state where the question may arise. § 1, art. IV, U. S. Const.

■ The effect of the decision of the trial court in the instant case is to change the status, i.e., the domicile, of the children involved. By awarding custody to defendant, it follows that, if the court had jurisdiction to make such award, the domicile of the children automatically would change from the state of Indiana to the state of Oregon; the father's domicile here would fix their domicile. However, the trial court had no such jurisdiction. Its sole function in this proceeding was to inquire into the legality of defendant's custody of the children and to award custody to the person legally entitled thereto.

The law applicable to a situation such as now confronts the court is well stated in *Jones v. McCloud,* 19 Wash2d 314, 142 P2d 397. That was a habeas corpus proceeding brought by the father of the infant child involved against the mother. By decree of the circuit court of Deschutes county, Oregon, in a divorce suit, the child's custody had been awarded to the father. At the time the habeas corpus proceedings were instituted, the child was physically present in Kitsap county, Washington, in the custody of his mother. The Washington Supreme Court based its decision upon a prior decision of that court, from which it quoted at length; *Motichka v. Rollands,* 144 Wash 565,

258 P 333. The following was quoted at page 323 of 19 Wash2d:

"* * * Eva Irene [the child] never had a residence or domicile in this state or in any other state than Montana. The child was but temporarily sojourning in this state.

"We read in section 1, art. 4, of the Constitution of the United States that:

'Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.'

"It seems to us that the trial court has erroneously ruled, or in any event erroneously assumed, that this constitutional mandate is of no controlling force in this case, because Eva Irene is physically within the territorial jurisdiction of that court; and that, therefore, the divorce decree of the Montana court awarding her custody to appellant may be ignored here, upon showing of change of conditions since the rendering of the Montana decree of divorce.

"* * * Much is said in the brief of counsel for respondent touching the present welfare of the child in the light of what is claimed to be changed conditions of the parties and of the child since the rendering of the Montana divorce decree. Were it necessary to go into that particular phase of the controversy, much apparently well-grounded argument could be advanced both for and against the desirability of change of the custody of Eva Irene, *but that, we think, is foreign to our proper inquiry here to be made, in view of the fact that Eva Irene is not and never was a resident of or domiciled in the state of Washington,* but has always, since her birth, been a resident of and domiciled in the state of Montana." (Italics ours.)

The court sustained the writ and directed that custody of the child be awarded to the father. See also *Cusack v. Cusack* (Tex. Civ. App.), 107 SW2d 1021; *People*

*v. Gimler,* 60 NYS2d 622, 624 (affirmed with no opinion: 270 App Div 949).

In 2 Beale, The Conflict of Laws, 717, § 144.3, it is said:

> "Since custody of a child by one parent carries with it domicil and a domestic status, jurisdiction to give the child to one parent or the other depends in principle on the domicil of the child; and a state which is the temporary residence of the child, not the domicil, cannot confer the right to custody. A *fortiori,* a decree for custody rendered in a state where the child is neither resident nor domiciled is void for lack of jurisdiction."

■ However, the law is well settled that, where jurisdiction over the custody of a minor child has been exercised by a court of one state, and thereafter the child becomes *domiciled* in another state, and there has been a substantial change in circumstances following entry of the original decree that affects the welfare of the child, the courts of the latter state may assume and exercise jurisdiction of an equitable nature respecting custody. In such circumstances, the full faith and credit clause of the federal constitution does not bar such inquiry. *In re Groves,* 109 Wash 112, 186 P 300; 27 CJS, Divorce, 1283, § 329; 39 CJS, Habeas Corpus, 586, § 46b.

We have adopted that rule in this state. *Crowell v. Crowell,* 184 Or 467, 198 P2d 992; *Ashbaugh v. McKinney,* 182 Or 652, 189 P2d 583; *Bartlett v. Bartlett,* 175 Or 215, 152 P2d 402; *Armstrong v. Vancil,* supra; *Friendly v. Friendly,* 137 Or 180, 2 P2d 1; *Barnes v. Lee,* 128 Or 655, 275 P 661; *Re Application of Ashley,* 113 Or 43, 231 P 153; *Bryant v. Dukehart,* supra; *Griffin v. Griffin,* 95 Or 78, 187 P 598.

In each of these decisions by this court, *domicile* of the child within this state was the determining factor

insofar as the question of jurisdiction of the court to pass upon the welfare of the child was concerned, and to award custody accordingly.

The rule was first definitely established in this state by the decision in *Griffin v. Griffin,* supra. The Griffin case has not only been cited and quoted from as authority in later decisions of this court, but also has been frequently cited in textbooks and by courts in other jurisdictions.

In the Griffin case, custody of the children had been awarded the mother by interlocutory decree of the superior court of Del Norte county, California, in a divorce suit instituted by the mother against the father. The California court had jurisdiction of the parties and the subject matter of the suit. At the commencement of the suit and when decree was entered, all parties were residents of and domiciled in Del Norte county. The mother came to Oregon and established her domicile in Yamhill county. The minor children were with her. The husband instituted habeas corpus proceedings against the mother to secure their custody. The trial court found that their best interests and welfare demanded they remain in the custody of the mother and dismissed the writ. The father appealed. At page 87, this court commented:

"* * * We know of no law that would prevent the mother from changing her domicile to another state, and upon compliance with the decree, taking the children with her. The children being in the care and custody of the mother, her residence is their residence. Such is the natural effect of a decree of divorce."

At page 84, we said:

"* * * A decree of a court of one state ordering the custody of a child is not binding upon the courts

of another state under the full faith and credit clause of the Federal Constitution *after the child has become domiciled in the latter state.* Such a decree as to a child has no extraterritorial effect beyond the borders of the state of its rendition. The courts of the second state will not remand the child to the jurisdiction of another state, especialy [sic] where it is against the true interests of the child. The reason given for this rule is the fact that the children are the wards of the court and the right of the state rises superior to that of the parents. *Therefore, when a child changes his domicile from one state to another and becomes a citizen of the second state, he is no longer subject to the authority and supervision of the courts of the first state:* 15 R.C.L., p. 940, § 417." (Italics ours.)

This court affirmed the decree.

In *Bryant v. Dukehart,* supra, it appears that the wife and her child had legally established a domicile in Oregon. In *Re Application of Ashley,* supra, at page 50, this court quoted with approval the following from *Griffin v. Griffin,* supra:

"The state, as *parens patriae,* has the undoubted right to determine the status or domestic and social condition of infant citizens domiciled within its territory."

At page 51, this court said:

"* * * By virtue of their equitable power, the courts of this state will care for the welfare of *its minor citizens domiciled here,* actuated by the principle that, respecting children of tender years especially, the welfare of the child is of controlling importance." (Italics ours.)

In *Barnes v. Lee,* supra, the child involved was legally domiciled here at the time the habeas corpus proceeding was instituted. The court quoted with

approval from *Griffin v. Griffin,* supra, respecting the effect of domicile of the child within this state.

In *Friendly v. Friendly,* supra, at page 182, this court again quoted from the Griffin case as follows:

"A decree of a court of one state ordering the custody of a child is not binding upon the courts of another state under the full faith and credit clause of the Federal Constitution after the child has become domiciled in the latter state."

In *Bartlett v. Bartlett,* supra, the right to custody of a child domiciled in Oregon was at issue. Custody originally had been awarded to the mother by a divorce decree of a court of competent jurisdiction in the state of Idaho. The mother had removed to this state with her child and had legally established a domicile here. The court again cited the Griffin case as an authority.

In *Ex parte Quinn,* supra, at page 772 of 233 P2d, we interpreted our prior decisions as follows:

"Where jurisdiction over the custody of a minor child has been exercised by a court of a foreign state, *and thereafter the child becomes domiciled in the state of Oregon,* and there has been a change in circumstances following the entry of decree in the out-of-state court, the courts of this state may assume and exercise jurisdiction of an equitable nature in order to protect the welfare of such child. The full faith and credit clause of the Federal constitution does not bar such a proceeding. Crowell v. Crowell, supra; Ashbaugh v. McKinney, 182 Or. 652, 189 P. 2d 583; Bartlett v. Bartlett, supra; Armstrong v. Vancil, supra; Griffin v. Griffin, supra." (Italics added.)

■ We do not wish to be understood as holding that under no circumstances may the courts of this state assume jurisdiction over the welfare of a child not

*domiciled* here. If a minor is found within this state who is deprived of parental care, control, and oversight, or who is neglected or abandoned and in need of protection, the courts of this state will afford at least temporary relief. The rule applicable is well stated in 43 CJS, Infants, 50, § 4, as follows:

> "A minor, deprived of parental care, control, and oversight, is considered a person under disability, a ward of the state, over whom the state may and should exercise its sovereign power of guardianship, through its duly constituted agencies; and, as parens patriae, may assume for him parental authority and duty. This power is not an unlimited and arbitrary one, and is exercised only in cases where the child is destitute of that parental care and protection to which he is entitled."

In this state the legislature has created juvenile courts with jurisdiction to discharge the duty the state owes in the respects mentioned. Ch. 6, title 93, OCLA.

In *Motichka v. Rollands,* supra, at page 334, the Washington Supreme Court said:

> "* * * It may also be assumed that the general sovereign guardianship of the state is such that it extends to the temporary protection of all nonresident minors while temporarily in the state. But no decision has come to our notice holding or suggesting that the courts of one state may permanently assume general guardianship over a minor temporarily sojourning in the state, who is a resident of or has its domicile in another state. While this is a habeas corpus proceeding in form, it is, in substance, but a controversy between these parties over the rightful custody of Eva Irene; and the judgment rendered in this case is, in substance, an awarding of her to respondent and in effect permanently depriving appellant of the custody of the child and his right to take the child back to Montana, the place of his and its residence and

domicile. It seems to us that, under the circumstances here shown, the decree of the Montana court awarding Eva Irene to appellant must be given full faith and credit and recognized as a final adjudication on that question until modified by that court, or until Eva Irene ceases to have her residence and domicile in the state of Montana."

For the reasons herein assigned, the decree of the trial court is reversed and this cause remanded with directions to enter judgment sustaining the writ and awarding custody of James H. Royer and Thomas W. Royer to their mother, plaintiff herein, to the end that the mother may take her children to their home in Indiana, where the question of the custody of the minors may be further considered and determined, if petitioned for, by the courts of that state.

We further are of the opinion that the mandate in this case should go down immediately upon the filing of the opinion, and that immediately upon receipt of such mandate the trial court should take such steps as may be necessary to place these children in the temporary custody of some officer of the court, such officer to deliver the minors into the custody of plaintiff, upon her demand, approved by the court.

Decree reversed with directions.

### PETITION FOR REHEARING

*Kenneth E. Shetterly* and *Philip Hayter,* of Dallas, for appellant.

*Lawrence N. Brown,* of Salem, and *Bruce Spaulding,* of Portland, for the petition.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, WARNER and TOOZE, Justices.

**TOOZE, J.**

Defendants have filed a petition for rehearing, alleging as follows:

"* * * the Court erred in not holding:

"' * * * that the court is acting on behalf of the state as parens patriae, under which mere residence of the child within the state suffices to give the judge jurisdiction to adjudicate what is for the best interests of the child.' "

"(4 A.L.R. 2d. 13, said line of authority not having been discussed by the Court in the original opinion herein) and in not holding that the welfare of the children may be considered by the Court."

It is not to be assumed that this court failed to give careful consideration to the exhaustive note in 4 ALR2d 13, simply because it did not, in its opinion, discuss the same in detail. However, in the light of the petition for rehearing, we have again considered that note.

As shown by the discussion appearing in the ALR note mentioned, there is an apparent conflict among the authorities upon the question decided by this court. As stated by the writer thereof at page 13:

"The cases deciding the question of the power of the court to award the custody of a child which has its legal domicil in another jurisdiction are in considerable confusion."

In *Finlay v. Finlay*, 240 NY 429, 148 NE 624, 40 ALR 937, 938, decided in 1925, Judge Cardozo used the following language:

"The jurisdiction of a state to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. * * * For this, the residence of the child suffices, though the domicile be elsewhere. * * * But the limits of the jurisdiction

are suggested by its origin. The residence of the child may not be used as a pretense for the adjudication of the status of parents whose domicile is elsewhere, nor for the definition of parental rights dependent upon status.''

The courts taking a view opposite to that adopted by this court often quote the above from Judge Cardozo's opinion. However, the holding in *Finlay v. Finlay* must be considered in the light of the facts in that case. In the opinion, the facts are stated as follows:

''Plaintiff, a resident of St. Louis, Mo., brings this action against his wife, who is living in New York, for judgment regulating the custody of their infant children. Husband and wife formerly had their home together in Westchester county, New York. In the early part of 1923 the wife left the husband, taking the children with her, and since then has refused to live with him. Following this abandonment, the husband went to St. Louis, where he still maintains his home. The children are with their mother in Westchester county, N. Y. She refuses to give them up. The husband does not wish a separation. He could not get one from the courts of New York in view of his nonresidence. * * * What he wishes is a judgment that will enable him to share with his wife the custody of the children. He prays for a decree 'granting unto the plaintiff the custody and control during fixed periods each succeeding year of his said two sons, and for such other and further relief as may be just in the premises.' ''

The case was decided upon a procedural question. The special term for Westchester county had granted the motion of the wife for judgment in her favor upon the pleadings. The appellate division of the Supreme Court, second department, had reversed the judgment of the special term. The New York Court of Appeals reversed the order of the appellate division and af-

firmed that of the special term. It is manifest, therefore, that the first quoted portion of the opinion was pure dictum and wholly unnecessary to a decision in the case.

In *People v. Gimler,* 60 NYS2d 622 (1946) (affirmed with no opinion: 270 App Div 949), cited in our original opinion, the New York court adopted the same rule enunciated by us in the instant case. In that case the husband left New York and went to Wyoming, where he established his domicile. The wife and child remained in New York. The husband instituted a divorce suit in Wyoming, the wife making an appearance. Custody of the child was awarded to the father. The father then changed his domicile to Maryland. He instituted a proceeding in New York to secure custody of his child. The suit was brought against one William Gimler, the maternal grandfather of the child. Gimler contended that it was the duty of the court to decide what was best for the child, instead of merely honoring the decree of divorce entered in Wyoming. The court, at page 624, stated the question for decision as follows:

"The first question is whether or not there is any such power in this court; the foreign decree is not attacked and, since it was entered after the Wyoming court had acquired jurisdiction over both parties, the deliberate agreement that the child should thereafter be in the custody and control of the father raises the question whether the child is at all subject to the directions of this court."

The New York court then concluded:

"If, therefore, the citizenship and domicile of the father and child in this case are not in this State, the fact that the child has remained here since the decree in the nominal custody of the mother who had appeared in the Wyoming court * * *, *is not sufficient to invest our court with power to inter-*

*fere with the complete custody granted in due form,* with jurisdiction and on consent, whereby the father became the sale [sic] judge of the good of the child in terms of custody and residence. It seems, therefor [sic] * * * that *there is no ground for jurisdiction to modify the foreign decree.''* (Italics ours.)

The court also discussed some of the prior New York decisions where jurisdiction had been assumed to pass upon the best interests and welfare of the child. At page 625 it distinguished those cases from the matter then under consideration as follows:

''The New York decisions cited by the respondent all seem to be instances where the child *was then a citizen of New York, whereupon this court had jurisdiction* to decide what is best for it. There seems to be no decision wherein the residence situation is that of the parties heard in this proceeding.'' (Italics ours.)

■ ■ This is precisely the same distinction we drew between our former opinions, and the facts there involved, and the instant case. One is a citizen of the state in which he has his domicile. In the instant case the minor children of plaintiff and defendant, under the applicable law, have their domicile in the state of Indiana, and, hence, are citizens of that state, and not of this state, though temporarily residing here.

■ ■ In arriving at our ultimate conclusions in the instant case, we were persuaded by what we deemed to be the better reasoning of those authorities asserting the proposition that, unless the child is domiciled in the state, the court has no jurisdiction to inquire into what its welfare and best interests demand, except under certain exceptional circumstances as outlined by us, and that the determination of the court of domicile is entitled to full faith and credit in the state of the forum. As we pointed out in our opinion in this case, in the

prior decisions of this court involving the custody of an infant whose custody had been awarded by a court of a foreign jurisdiction, and wherein we assumed jurisdiction to pass upon the question of its welfare, it appeared that the child had become legally domiciled in and a citizen of this state. It is fundamental that each state should be permitted to determine the status of its own citizens.

Our opinion in this case is based entirely upon a jurisdictional question. We do not believe the trial court had jurisdiction to inquire into the welfare of these children and award custody accordingly, and, of course, we have no such authority. This does not mean, however, that we are not deeply concerned about the welfare of these children. We are. If jurisdiction had existed, we are of the opinion that the ultimate conclusions of the experienced trial judge were correct, everything considered. But we are here concerned with a highly important principle of jurisdiction. It is obvious that we cannot make law to suit each individual case as it arises. There must be stability and uniformity in our decisions. Otherwise, the result would be legal chaos.

In our opinion in this case, we gave considerable weight to the decision of the Washington Supreme Court in the case of *Jones v. McCloud,* 19 Wash2d 314, 142 P2d 397, wherein was involved an award of custody of a child by the circuit court of Deschutes county, Oregon, in a divorce suit. The Washington court upheld the Oregon decree. The reasoning of the Washington court appealed to us as being absolutely sound. It is in keeping with the principles stated in Restatement, Conflict of Laws, 212, § 147.

The rule we have adopted will, as a whole, tend to discourage kidnapping, as well as contempt for the

lawful decrees of a court of a sister state. An opposite rule, as contended for by defendant, would not only place the stamp of approval upon kidnapping and contempt, but would make this state a mecca for all persons seeking to evade the jurisdiction of the courts of the state of their original domicile. It would amount to a tacit admission, at least, that our own decrees in similar situations are of no effect beyond our boundary lines.

We quote from the author of the note in 4 ALR2d, at page 15, as follows:

"In a few cases, notably those from the state of Washington, it has been the policy of courts, on finding the child within its borders but domiciled in another state, not to decide the question of proper custody on the merits—barring exceptional cases of temporary custody arising out of immediate emergency— * * * .

"*It is submitted that the adoption of such a policy by the courts generally would tend to discourage kidnapping by parents or evasion of the jurisdiction of the domicil by physical removal elsewhere.* To be sure, the courts generally profess to condemn such conduct, *but so long as a party has reason to believe that he may fare better in a foreign court, the assumption of jurisdiction by foreign courts will tend to encourage the practice.*" (Italics ours.)

The instant case offers a very good illustration of what the author of the note evidently had in mind.

The record made in the trial court in this case discloses that, at the time the divorce suit was commenced in Indiana, all the parties were actually residing and domiciled in that state. The defendant father was personally served with process in that suit and made an appearance. The court entered an order awarding custody of the minor children to the mother pendente lite.

The father was ordered to contribute toward the support of the children, and was, on one occasion, haled into court for failure to comply with the order of support. At the trial of the suit, defendant's attorney appeared and participated in the proceedings. In the final decree of the court, permanent custody of the children was awarded to the mother. At that time the children were temporarily in the home of defendant's parents at Lansing, Illinois, where they had been taken by the father under arrangement made with the mother, and where they were to remain only until the mother was able to complete the repairs on a home she had acquired in Indiana.

After decree, the mother went to Lansing to get her children. The defendant father refused to give them up, telling the mother that the Indiana decree for custody was of no effect in Illinois. It is clear that defendant knew of the terms of the final decree, and, of course, knew of the order made giving the mother custody during the pendency of the suit. The mother returned to Indiana, consulted her attorney, and a week later went back to Lansing for the children. In the meantime, the defendant had surreptitiously departed from his parents' home, unlawfully taking the children with him. He left no word for the mother as to his whereabouts, and his parents refused to divulge the information to her. More than two years elapsed before the mother was able to locate the children, and then only through employment of a private detective agency.

It is manifest that defendant's actions were prompted by an intent and purpose on his part to evade the jurisdiction of the Indiana court. His actions were in direct violation of the decree of that court and amounted to a contempt thereof. In effect, he

kidnapped these children. As is altogether too often the case where matrimonial difficulties end in the divorce court, innocent children must suffer for the sins of their parents, but such is the evil fruit of divorce. This is a deplorable social problem that the law has yet failed to solve.

However, as pointed out in our opinion, the courts of Indiana, in passing upon the question of custody of infants in divorce proceedings, are governed, as are the courts of this state, by what is deemed to be the best interests and welfare of the children involved. This also is true as regards the hearing of an application for modification of a decree respecting custody. There have been some changes in conditions as applied to these children since the entry of the Indiana decree that affect their welfare, but those matters are exclusively for consideration by the superior court of the state of Indiana, for Allen county.

Realizing the importance of this case, we gave very careful consideration to the question at issue before arriving at our final conclusions, and we have further carefully reconsidered the matter. However, in view of the fact that the Indiana court had complete jurisdiction over these children, as well as over the parents, and has at no time surrendered jurisdiction insofar as the minors are concerned, thus continuing the status of said children as wards of that court, we are unanimously of the opinion that the superior court for Allen county, and that court only, has the jurisdiction to order a change in custody. Defendant's remedy lies there, not in this court.

The petition for rehearing is denied.